# HANSEN *v.* NICOLL.

---

APPEAL AND ERROR; CONSPIRACY; CASE; ACTIONABLE DAMAGE; PLEADING.

1. On appeal by the plaintiff from a judgment on a verdict for the defendant, directed by the court upon the plaintiff's evidence and statement of evidence, this court will consider the case as upon demurrer to the evidence; that is, in a light most favorable to the appellant.

2. The gist of an action on the case for conspiracy is the damage done the plaintiff, and not the conspiracy, which is mere matter of aggravation; and one of the several defendants may be found guilty and the others not guilty, although no conspiracy be proven.

3. The newspaper publication of statements charging plaintiff with being a blackmailer will not be considered as an item of damage in

an action on the case for conspiracy, where the action as to the one specifically charged with the publication has abated, and there is no evidence to justify a finding by the jury that either of the remaining defendants was in any way responsible for the publication.

4. Inducing a woman to leave the jurisdiction of the court for the purpose of depriving plaintiff of her testimony in certain equity suits which he had brought against her and another for the recovery of claimed attorney's fees does not constitute actionable damage in an action on the case for conspiracy, where, along with other inconsistencies in plaintiff's position, when such suits were brought, he had not an enforceable contract entitling him to the fees claimed.

5. The averment in a declaration that the defendants, in inducing a named person to leave the jurisdiction, prevented the plaintiff from establishing by her testimony in pending proceedings, "certain essential and material facts," is insufficient in the absence of an averment as to what those facts were, and is a mere conclusion of the pleader.

6. The alleged concerted action of defendants to keep a woman from giving testimony in disbarment proceedings against plaintiff does not constitute actionable damage in an action on the case for conspiracy, where it does not appear that her testimony would have been favorable to him, and while she was within the jurisdiction of the court he waived his right to take her testimony.

No. 2473.   Submitted March 5, 1913.   Decided April 7, 1913.

HEARING on an appeal by the plaintiff from a judgment of the Supreme Court of the District of Columbia on a verdict for the defendants, directed by the court, in an action for damages for an alleged conspiracy.          *Affirmed.*

The COURT in the opinion stated the facts as follows:

This is an action on the case for conspiracy, and the appeal is from a directed verdict for the defendants, De Lancy Nicoll, George Gordon Battle, and Turner H. Wickersham, appellees here. The action, as originally brought, was against appellees and Thomas F. Walsh, Courtlandt V. Anable, and John D. Lindsay. Mr. Walsh died subsequent to the bringing of the suit, never having been served with process. As neither An-

able nor Lindsay was served, a discontinuance was entered as to them.

The declaration sets forth that appellant, Dethlef C. Hansen, in September, 1904, was an attorney and counsellor at law, and engaged in the active practice of his profession in the city of New York; that he was employed by one Violette Watson to institute and prosecute certain actions in her behalf against Mr. Walsh, and that he associated with him as counsel, with the knowledge and consent of his client, the late John G. Carlisle; that Miss Watson made an affidavit in duplicate for appellant and Mr. Carlisle in which she set forth the particulars of her alleged claim against Mr. Walsh; that on September 6, 1904, three actions were commenced in the supreme court of the State of New York in behalf of Miss Watson against Mr. Walsh, and that he was served with a summons in each action. The firm of Nicoll, Anable, & Lindsay was retained by Mr. Walsh to defend said actions. Before appearance was entered for Mr. Walsh, it is averred that this firm and the appellee Wickersham coerced Miss Watson, who was then a minor, to sign certain letters directing the immediate discontinuance of the actions; that a collusive and illegal settlement was made with her, and, further, that she was induced to leave the jurisdiction; that appellant, on the 23d of September, 1904, located Miss Watson in Baltimore, Maryland, and induced her to return to New York; that on the 27th of September Nicoll, Anable, & Lindsay presented to appellant the letters obtained from Miss Watson, directing the discontinuance of said actions, and demanded that the papers in appellant's possession should be delivered to them; that Miss Watson, on October 1st, in an interview with appellant and Mr. Carlisle, repudiated said letters and settlement, and indicated her willingness to verify the complaints; that on October 10th Mr. Carlisle delivered to Nicoll, Anable, & Lindsay his copy of the affidavit read by Miss. Watson and the contract of retainer he had with her, and notified them of his withdrawal from the case. It is averred that this was without the knowledge of appellant; that on the 13th or 14th of October appellant was served with another

demand from Nicoll, Anable, & Lindsay for the discontinuance of said actions; that on October 20th, the last day upon which complaints could be served upon Mr. Walsh, and after numerous unsuccessful efforts to obtain an interview with Miss Watson or Mr. Carlisle, appellant prepared and executed an affidavit to secure from Mr. Justice McCall of the supreme court of the State of New York an extension of fifteen days in which to serve complaints in said actions, notice being served upon Nicoll, Anable, & Lindsay; that this firm thereupon prevailed upon the court to revoke said order and to insert therein, as ground for said action, that appellant had practised deceit and fraud upon the court in stating in his affidavit that Mr. Carlisle was of counsel and that the causes of action were meritorious, and in failing to advise the court that Miss Watson had directed the discontinuance of said actions; that, upon a hearing, plaintiff was exonerated by the court and said derogatory statements were stricken out; that, upon the suggestion of the court that appellant might discontinue said actions without affecting his right under the statute to maintain an equitable action to foreclose his attorney's lien, said actions were, by order of the court, discontinued; that thereupon plaintiff, believing there had been a collusive settlement between Mr. Walsh and Miss Watson, instituted in the supreme court of the State of New York, in the month of December, 1904, three equitable actions against Mr. Walsh and Miss Watson to foreclose his alleged attorney's lien; that complaints were subsequently served upon Mr. Walsh and upon Miss Watson; that George Gordon Battle, Esq., was employed by Nicoll, Anable, & Lindsay, at the expense of Mr. Walsh, to defend Miss Watson in these actions.

It is further averred that appellees, and the others mentioned, with knowledge of the facts hereinbefore set forth, and with intent to ruin the appellant, entered into a conspiracy to that end; that the ruin of appellant was to be effected by preventing him from prosecuting said equitable actions, and by causing it to be believed by the public in general that he was a blackmailer and perjurer, unfit to practise his profession,

and by causing him to be prosecuted and disbarred; that, in pursuance of their plan, the conspirators maliciously and falsely composed and caused to be published in leading newspapers throughout the United States that plaintiff was a perjurer and blackmailer. The declaration then sets forth the alleged libelous matter, all of which purports to have emanated from Mr. Walsh personally. It is further averred that the conspirators, knowing Miss Watson to be "a material witness in plaintiff's behalf in said equitable actions then pending," again induced her to leave the jurisdiction, and paid her large sums of money to remain out of the jurisdiction; that thereafter, on or about September 5, 1903, the conspirators composed and formulated certain false, malicious, and libelous charges concerning appellant, and filed the same with the district attorney of New York county; that these charges were then filed by said conspirators with the grievance committee of the Bar Association of the city of New York; that, in pursuance of said conspiracy, and with knowledge that Miss Watson was out of the jurisdiction, and that she would be a material and necessary witness for appellant, said committee was induced to press said charges before the appellate division of the supreme court of the State; that, after answer by appellant, and after a reference to Edward J. McGuire, Esq., Miss Watson, for the purpose aforesaid, was kept out of the jurisdiction; that after the referee had filed his report, and while it was pending before said appellate division, in the month of June, 1907, Miss Watson was again within the jurisdiction. and made statements to members of the Bar and certain newspaper reporters which were given wide circulation, completely exonerating appellant from all of said charges, and expressing her willingness to become a witness in both the disbarment proceedings and said equity suits; that by the payment of large sums of money, Miss Watson was again induced to leave the jurisdiction.

It is further averred that, by reason of the aforesaid, appellant was prevented from securing a fair and impartial hearing before said referee, and "from establishing from the evidence of said Watson the truth of material and essential

allegations of fact as set forth in plaintiff's answer to said charges before the referee." The referee's report is then set forth in the declaration. It is then averred that, by reason of the grievances aforesaid, appellant was prevented from having a fair and impartial hearing on appeal to said appellate division which, in June, 1907, confirmed the report of said referee and suspended appellant from the practice of his profession for one year; that appellant was "prevented from establishing by the testimony of said Watson in said equity actions, then pending, certain essential and material facts of his right to recover in said actions, which he would otherwise have been able to do;" that, by reason of said grievances, said equity actions were dismissed for want of prosecution, in consequence of all of which appellant was ruined in his profession and good name.

Before the appellant's evidence was all in, his counsel, at the court's suggestion, prepared and read to the court a statement of the various facts relied upon. The court thereupon directed a verdict for the appellee.

We will now state briefly the facts before the trial court: Miss Watson, at the time of the service of summons upon Mr. Walsh in the original actions against him, was a minor, and there is no evidence or claim in this record that she ratified her contract with appellant until some time after the bringing of the three equitable actions against her and Mr. Walsh. According to the evidence, she then had entered into a settlement of any possible claims she may have had against Mr. Walsh. There was no evidence that anyone other than Mr. Walsh was responsible for the newspaper publications concerning appellant. In May, 1907, an order was obtained from a justice of the supreme court of New York for the taking of the deposition of Miss Watson in said equity actions and also in the action for libel which appellant had theretofore brought against Mr. Walsh because of said publications, and, on the 1st of July, at the instance of counsel for Mr. Walsh, the order for the taking of her deposition in the equity suits was set aside upon the ground that Miss Watson, at the date of her original contract with ap-

pellant, was an infant, and that appellant had failed to present sufficient proof that the contract was affirmed by Miss Watson upon her becoming of age. The order for the taking of her deposition in the libel action was also set aside, the ground being that the affidavit upon which the order was granted did not show that the witness was about to depart from the State. These several actions were subsequently noted for trial by appellant, and judgments against him were suffered to be entered by default, no efforts having been made by him to obtain a continuance. As previously indicated, it is nowhere stated in this record what the testimony of Miss Watson would have been had she appeared as a witness for appellant in these several actions.

As to the disbarment proceeding, it appears that while the report of the referee was before the appellate division, counsel for appellant filed a motion that the matter be again referred to the referee because Miss Watson, who was then within the jurisdiction, had stated to counsel that she had remained out of the jurisdiction intentionally, by direction of persons acting as attorneys for Mr. Walsh. As a further reason for the re-reference, the affidavit stated that there was good reason to believe that she was then endeavoring to negotiate another settlement, when she would again leave the jurisdiction; that to secure her testimony required immediate action. Upon the application the court made the following indorsement: "This order can only be made to the court on notice for a regular motion day." According to the statement of appellant's counsel to the court below, the next regular motion day was in October, when Miss Watson had again departed. The record, however, shows that on the 27th of June, 1907, appellant made an affidavit in the disbarment proceedings in which he stated that his counsel "has written to the attorney for the petitioner in that proceeding to have the said order of suspension entered immediately, so that the appeal may be taken." It thus appears that, even before it could be known that Miss Watson was to leave the jurisdiction, appellant had elected to have judgment entered against him in this proceeding, relying upon his right of ap-

peal. ˙ The decision of the court sustained the referee's report and suspended appellant from practice for one year. The court in its opinion said: "We think that the referee was justified in his conclusion that the petitioner was guilty of unprofessional conduct. The mitigating circumstances seem to relate solely to the respondent's condition when he drew the affidavit upon which he obtained an order extending the time to serve the complaints in the three actions which he had commenced as attorney for plaintiff; but there can be no question that he understood perfectly well, some time before this application was made, or contemplated, that Mr. Carlisle had withdrawn from the case, and he had been advised by Mr. Carlisle to abandon it.

"The only service that he had up to this time performed was to prepare the contract giving him a percentage of the recovery and serving the summons. He must be presumed to have known that his client was an infant and incapable of making a contract which could be enforced, and that therefore he had no enforceable contract which would entitle him to pursue the litigation for any compensation to which he was entitled. He knew that he had been directed by his client to discontinue the actions which he had brought on her behalf. She had stated to him in writing several times that she had no just claim against the defendant in the actions. In view of these instructions from his client and the fact that Mr. Carlisle had withdrawn from the case and advised him to abandon˙ it, it was certainly unprofessional conduct for the attorney to obtain from the court an order which extended the plaintiff's time to serve the complaints, upon his affidavit that Mr. Carlisle was counsel, and stating that the plaintiff had a good cause of action, when she had expressly stated to the affiant that she had no cause of action." It further appears that Miss Watson's deposition was taken in the present case, but it does not appear that she was questioned as to the facts out of which the disbarment proceeding grew, and upon which the judgment in that proceeding was based. Moreover, her deposition was not introduced in evidence by appellant, nor does it appear that her testimony was favorable to his contentions.

*Mr. John C. Gittings, Mr. Justin Morrill Chamberlin,* and *Mr. Andrew J. Dewey* for the appellant.

*Mr. A. S. Worthington* for the appellees.

Mr. Justice ROBB delivered the opinion of the Court:

The court having directed a verdict upon appellant's evidence and statement of evidence, we must consider the case as upon demurrer; that is, in a light most favorable to appellant. That such an action may be maintained is well settled by numerous decisions. But it is equally well settled that the gist of such an action is the damage done, and not the conspiracy. In *Verplanck* v. *Van Buren,* 76 N. Y. 247, 259, it was held that, in an action on the case for conspiracy and for acts in the nature of a conspiracy, the *damage* is the cause of action, the conspiracy being mere matter of aggravation. It was further held that where parties, in pursuance of a combination or conspiracy, fraudulently make use of legal proceedings to injure another, an action lies against them by the person injured to recover the damages sustained. In *Van Horn* v. *Van Horn,* 56 N. J. L. 318, 28 Atl. 669, an action on the case for conspiracy to injure the plaintiff in her business through false and malicious statements concerning plaintiff's business and character, the court carefully reviewed the authorities and reached the conclusion that the damage resulting from the malicious acts is the foundation and support of such an action; that, such being the foundation of the action, one of several defendants may be found guilty and the others not guilty; and this notwithstanding that no conspiracy is proven. In support of their conclusion the court cited *Parker* v. *Huntington,* 2 Gray, 124, where the action was against two for maliciously conspiring to have the plaintiff indicted, and where the court observed that the charge of conspiracy was never deemed essential, it being mere surplusage, and hence that there might be a recovery against one or both. The court also cited *Wellington* v. *Small,* 3 Cush. 145, 50 Am. Dec. 719,

which was an action on the case for conspiracy, and in which the court found that the gist of the action is not the conspiracy, but the damage done to the plaintiff. Many other cases were cited, but it is unnecessary to review them here.

The first specific act of which appellant complains was the publication in various newspapers of statements by Mr. Walsh to the effect that appellant was a blackmailer. Since the action abated as to Mr. Walsh, and there is no evidence from which the jury would be justified in finding that either of the appellees was in any way responsible for such publications, it is apparent, we think, that this item of alleged damage must be eliminated from further consideration. The second specific act complained of was the inducing of Miss Watson to leave the jurisdiction of the supreme court of the State of New York for the purpose of depriving appellant of her testimony in the three equity suits which he had brought against Mr. Walsh and her. In the first place, when these suits were brought appellant had no enforceable contract with Miss Watson, as the appellate division of the supreme court of the State found and as the evidence before us clearly shows. . There was therefore no legal basis for these equitable actions, and the testimony of Miss Watson could not have been of any assistance to appellant. There are other inconsistencies in appellant's position. When he moved the court, in the original actions, for an extension of time in which to file verified complaints, he represented to the court that he was still counsel for Miss Watson in the actions, and, of course, authorized to act for her. Notwithstanding this, he discontinued those actions and thereupon brought the equitable actions against her and Mr. Walsh, upon the theory, of course, that she had settled the claims upon which the original actions were based. Since these equitable actions were brought after Miss Watson became of full age, and after she had made said settlement, it is difficult to perceive how any subsequent attempted ratification of her original contract with appellant could have affected the situation. Moreover, while it is alleged that the inducing of Miss Watson to leave the jurisdiction prevented appellant from establishing, by her tes-

timony, "certain essential and material facts," we are left entirely in the dark as to what those facts were. In other words, this averment is a mere conclusion of the pleader. Assuming that she would have testified to a settlement of her claims against Mr. Walsh, the attorneys through whom such settlement is alleged to have been made were available as witnesses. Appellant, of course, knew when, if at all, she ratified her contract with him, and yet he did not testify, but suffered a judgment to be entered against him by default. To have recovered in those actions it would have been necessary for him to show the existence of an attorney's contract, and a settlement in disregard of his lien growing out of that contract. As above suggested, if an attorney's contract existed, his own testimony should have been sufficient to establish prima facie that fact, and, if a settlement had been made, that should have been easily proven without the testimony of Miss Watson. Upon the facts before us, therefore, we cannot say that appellant was damaged by the failure of Miss Watson to testify in these equitable actions.

The third and last item of damage relates to the disbarment proceeding. This item is easily disposed of. It does not appear that Miss Watson would have given any testimony favorable to appellant had she been a witness before the referee; and, as previously pointed out, while she was within the jurisdiction, appellant waived his right to take her testimony. Assuming that the evidence submitted and offered would warrant the inference that there was concerted action to keep this young woman out of the jurisdiction of the courts of New York, we agree with the trial court that it does not appear that any actionable damage resulted to appellant therefrom. Judging from the frequency of the alleged settlements with her and the great notoriety engendered by her presence in New York, it is perhaps not strange that efforts were made tending to her effacement.

Judgment affirmed with costs.          *Affirmed.*