John C. GAGER, Appellant,

v.

"BOB SEIDEL," Seidel's Restaurant, et al., Appellees.

No. 16394.

United States Court of Appeals District of Columbia Circuit.

Argued Oct. 12, 1961.

Decided Feb. 20, 1962.

Mr. John C. Gager, appellant pro se.

Mr. John R. Hess, Asst. Corp. Counsel for the District of Columbia, with whom Messrs. Chester H. Gray, Corp. Counsel, Milton D. Korman, Principal Asst. Corp. Counsel, and Hubert B. Pair, Asst. Corp. Counsel, were on the brief, for appellees.

Before Mr. Justice BURTON, retired,* and EDGERTON and DANAHER, Circuit Judges.

DANAHER, Circuit Judge.

This appellant seeks reversal of a District Court order by which his latest[1] amended complaint was dismissed. The difficulties of which he had complained stemmed basically from his repeated parking in what he alleged is a private alley, adjacent to premises on 12th Street

---

* Sitting by designation pursuant to 28 U.S.C. § 294(a).

1. An earlier action entitled Gager v. District of Columbia, C.A. 739-60, D.D.C., was dismissed. There he sought to charge the District Commissioners with responsibility for the actions of certain police officers. Cf. Monroe v. Pape, 365 U.S. 167, 187-192, 81 S.Ct. 473, 5 L.Ed. 2d 492 (1961); Brasier v. City of Tulsa, Oklahoma, 268 F.2d 558 (10 Cir. 1959), cert. denied, 361 U.S. 964, 80 S.Ct. 595, 4 L.Ed.2d 546 (1960).

in downtown Washington where he sought to operate a dance club. Since police officers on several occasions issued parking tickets or impounded his car when so parked, appellant's first complaint[2] in the instant action, C.A. 2638–60, charged that his civil rights were being violated by officers who "conspired with Clark F. King, head of the Law Enforcement Branch of the Corporation Counsel."

Then followed the amended complaint now before us. It is presently alleged that appellee, Bob Seidel, who does business as "Bob Seidel's Restaurant,"[3] "pursuant to the conspiracy, and as an overt act towards its consumation [sic], * * * willfully and maliciously instigated and inspired" the various officers, appellees herein, to charge appellant with the offense of illegal parking in the alley and to impound his car.[4] The District Court on February 15, 1961, granted the appellees' motion to dismiss the amended complaint.

Appellant thereupon filed his timely motion in which he asked the court "to vacate the ORDER of February 15, 1961," [and] "to allow him a reasonable time," again to amend his complaint.[5] Appellant's motion to vacate and to amend was denied by order entered March 30, 1961. Within 30 days, appellant on April 26, 1961, gave notice of his appeal "from the ORDER of this [District] Court entered on the 30 day of March, 1961 in favor of defendants against said . plaintiff, dismissing the amended complaint by denying motion to vacate order, and allow plaintiff to amend."

■■ The police-officer appellees have asked this court to dismiss the appeal on the ground that the notice of appeal was filed 70 days after the February 15, 1961 order of dismissal. We conclude that the point is not well taken. The motion to vacate was timely since it was filed and served "not later than 10 days after entry of the judgment."[6] Accordingly and pursuant to Rule 73(a), the running of the time for appeal was terminated, and that time, 30 days, did not commence to run anew until the entry of the order disposing of the timely motion.[7] For the purpose of so concluding, we may take it to be immaterial that denial of the motion to vacate was

2. That complaint was also dismissed but with leave to amend. Mr. King has not been named as a party herein although he is alleged to have conspired with all other appellees "wrongfully to degrade, humiliate, and injure the plaintiff, in his good name, his reputation personally, and to ruin his efforts in reorganizing the aforesaid dance club." Our present appellees are "Bob Seidel" and eighteen police officers.

3. The record discloses that the restaurant is on Pennsylvania Avenue, around the corner from the appellant's rented premises. Access to the kitchen and rear entrance of Seidel's restaurant is gained through the controversial alley.

4. Basing each of four counts upon the alleged conspiracy, appellant, appearing pro se, has entitled his complaint "Conspiracy-False Arrest-Malicious Prosecution-Wrongful Conversion of Property-Threats-Slander and Defamation of Character." A second count charges that appellant was slandered and mocked by the police; a third count charges police with illegal entry upon his premises; and a fourth count charges that his car has been taken from him and concealed by the police, all "pursuant to the conspiracy." No special damage has been alleged and no specific business damage has been pleaded. Cf. Fowler v. Curtis Publishing Co., 86 U.S.App.D.C. 349, 182 F.2d 377 (1950).

5. He asserted in support of his motion that his claim should be reappraised in the light of Monroe v. Pape, supra note 1, 365 U.S. at 167–187, 81 S.Ct. 473. His "civil rights" claims had already been brought to the notice of the court by earlier allegations of record.

6. Fed.R.Civ.P. rule 59(e).

7. 7 Moore, Federal Practice ¶ 73.09 [1] at p. 3136, ¶ 73.09 [4] at p. 3143 (2d ed. 1955); Fed.R.Civ.P. rule 73(a); and see generally, Hulson v. Atchison, T. & S. F. Ry. Co., 289 F.2d 726 (7 Cir. 1961); Walker v. Bank of America National Trust & Sav. Ass'n, 268 F.2d 16, 19, 20 (9 Cir.), cert. denied, 361 U.S. 903, 80 S.Ct. 211, 4 L.Ed.2d 158 (1959).

not appealable.[8] We are satisfied under the circumstances as outlined, that the notice of appeal met the requirements of Fed.R.Civ.P. rule 73, 28 U.S.C.A.,[9] and accordingly our jurisdiction is established.

■ Since the appellant is representing himself we have considered his amended complaint and his arguments without regard to technical niceties.[10] We are bound to observe, nevertheless, that he has misconceived his claim of right as to the police-officer appellees, sued "each in proper person." The District Court had before it all materials available of record, both from the earlier case and from the various stages of the instant case. Thus before the court was appellant's conclusory allegation set out in his previosly stricken complaint, pleading:

"COUNT FIVE

(Abuse of Process-Conspiracy to Deprive Plaintiff of his Civil Rights)

\* \* \* \* \* \*

2. In and during the months of December 1959, and January 1960, the defendants conspired with Clark F. King, head of the Law Enforcement Branch of The Corporation Counsel, and others, to violate the Civil Rights of this plaintiff, provided for, and guaranteed to him by the Constitution, and the laws of The United States of America, and the rules and regulations issued thereunder, particularly with respect to the laws dealing with Civil Rights, and 'Due Process' and the protection to citizens granted thereunder, as set forth in the SUPPLEMENT TO TITLE 42, Section 1981, et seq. and more particularly Section 1983 and 1985 of THE UNITED STATES CODE, ANNOTATED.

\* \* \* \* \* \* "

■ Included in the record were the answering affidavits of named parties as well as that of the appellant. The District Judge clearly could see that this case differed fundamentally from the situation presenting specific violations of constitutional rights as considered in Monroe v. Pape.[11] We may assume that no one has a constitutional "right" to park in a forbidden area, or that he is not being denied the equal protection of the laws if his car is ticketed as all others should be when so parked. That police who ticket, or even impound, illegally parked cars generally are performing an authorized and immune function may be understood. Their acts in so doing have not been shown on the record here to have deprived this appellant of his "civil rights."

With the general situation so stated, we turn to the order of February 15, 1961, wherein the trial judge recited he had considered "the pleadings, the record, the memoranda of points and authorities in support of and in opposition to the motions, and the affidavits relating thereto and other papers on file in the case." He granted the motions of Seidel and the police-officer appellees to dismiss and denied the alternative motions for summary judgment.

It is clear, as the recitals, supra, indicate,[12] that the judge had considered the materials referred to. Among them was the appellant's affidavit pointing out his extensive service in the Navy and on merchant vessels as a result of which he

---

8. Sobel v. Diatz, 88 U.S.App.D.C. 329, 330, 189 F.2d 26, 27 (1951); Safeway Stores v. Coe, 78 U.S.App.D.C. 19, 136 F.2d 771, 148 A.L.R. 782 (1943).

9. Piatek v. Government Services, Inc., 111 U.S.App.D.C. 308, 296 F.2d 430, 431 (1961); Railway Express Agency, Inc., v. Epperson, 240 F.2d 189, 191, 192 (8 Cir. 1957). Cf. Hoiness v. United States, 335 U.S. 297, 300, 301, 69 S.Ct. 70, 93 L. Ed. 16 (1948). But see Foman v. Davis, 292 F.2d 85 (1 Cir. 1961), cert. granted,

368 U.S. 951, 82 S.Ct. 396, 7 L.Ed.2d 385 (1962).

10. Levy v. Hayward, 101 U.S.App.D.C. 232, 248 F.2d 152 (1957), cert. denied, 356 U.S. 941, 78 S.Ct. 783, 2 L.Ed.2d 815 (1958).

11. Supra note 5; cf. Dye v. Cox (E.D.Va. 1954), 125 F.Supp. 714.

12. Allison v. Mackey, 88 U.S.App.D.C. 154, 188 F.2d 983 (1951); cf. MacMaugh v. Baldwin, 99 U.S.App.D.C. 247, 248 n. 1, 239 F.2d 67, 68 n. 1 (1956).

had been "initiated in the principles of security maintenance." As a shore patrol officer in New Zealand, he said, he had become "capable of distinguishing the degree of control which a police force is bringing upon a situation." An affidavit by Officer Alexander disclosed that early on the morning of March 30, 1960, an officer had found open the front door to the studio, whereupon he called appellant "at his home and notified him that the officer assigned on foot patrol had found the front door to his premises unlocked," and appellant was requested "to come to his business premises and secure same." Appellant was informed that the officer would be standing by until appellant arrived. When at 3:30 A.M. the officer was still in the subject premises and appellant had not responded, he placed a second call to appellant's home and notified him that the officer was still awaiting appellant's arrival. He set forth that the telephone calls had been made in the course of his official duty as a police officer as required by the rules of the Police Department. An affidavit by Officer Gainey revealed that on another occasion he had found the front door to the premises unlocked, and that the officers had inspected the studio, only to determine that apparently there had been no unlawful entry.

■ Such references, among others disclosed in the mass of available material, illustrate the background upon which the trial judge acted. He granted the motions to dismiss the amended complaint, no doubt because he concluded

but did not say, that there had been a failure to state a claim upon which relief might be granted. In such situations, where "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56 * * *." So reads Fed.R.Civ.P. rule 12(b). In the circumstances of this particular case it may seem immaterial [13] whether the appellant fails as to the police-officer appellees by whichever route was followed. Where, however, the trial judge has relied upon matters outside the pleading, the better practice, as Rule 56 makes clear, is that summary judgment should follow when, as here, the judge could find that there existed no genuine issue of *material* fact and that the movants were entitled to judgment as a matter of law. [14]

■ The record as a whole disclosed, in short, that appellant had failed to state a case against the police officers. In some jurisdictions, [15] there is a well established rule of immunity from civil liability of public officers for an injury suffered as a result of acts within the scope of official authority. So to notice such a rule is not to say that police, as distinguished from other public officers identified in our cases, may never be liable for their tortious conduct. Nor on the other hand, *need* we say as to police officers that the absence of probable cause for the purported exercise of official authority or the presence of malice or other bad motive may not be sufficient to im-

---

13. Such is not always the case for obviously a motion to dismiss exercises a different office. Unlike Moffett v. Commerce Trust Co., 187 F.2d 242, 249 (8 Cir.), cert. denied, 342 U.S. 818, 72 S.Ct. 32, 96 L.Ed. 618 (1951), where the district judge declined to pass on the motion for summary judgment, the trial judge here had denied the alternative motions.

14. Allison v. Mackey, supra note 12; Appalachian Power Company v. American Institute of Certified Public Accountants, 268 F.2d 844, 845 (2 Cir.), cert. denied, 361 U.S. 887, 80 S.Ct. 158, 4 L. Ed.2d 121 (1959); 2 Moore, Federal

Practice ¶ 12.09 [3] at 2256 (2d. ed. 1948).

15. See e. g., O'Campo v. Hardisty, 262 F.2d 621, 624, 625 (9 Cir. 1958); Gregoire v. Biddle, 177 F.2d 579 (2 Cir. 1949), cert. denied, 339 U.S. 949, 70 S.Ct. 803, 94 L.Ed. 1363 (1950); and see Monroe v. Pape, supra note 1, 365 U.S. at 191, n. 48 and n. 49, 81 S.Ct. at 486; cf. dissenting opinion by Mr. Justice Frankfurter, Id. at 242–246, 81 S.Ct. at 513–515. See generally, Foote, Tort Remedies for Police Violations of Individual Rights, 39 Minn.L.Rev. 493 (1955).

pose liability upon officers so acting.[16] The question as to their liability, *vel non,* may turn on the particular function being performed by the police at the time and under the circumstances complained of. Their "bad" motive may in some situations become critical. Here it is not critical because the record relied upon by the trial judge shows, for the purposes of summary judgment, that there was no "bad" motive.

■ Certainly the appellant gains no status for his claims against the officers simply by joining them as alleged conspirators.[17] We reexamined the general rule applicable in such situations in Laughlin v. Rosenman.[18] As there reaffirmed, we deem it dispositive here.

■ A different situation arises with respect to the appellee Seidel. The series of controversies definitely had arisen because the appellant had claimed the privilege of parking in what he had alleged to be a private alley. He had pleaded that he had "obtained from his landlord" [not a party] "equal and coextensive" parking privileges in and the use of the "private alley" adjoining the business premises here involved, and that the alley for several years had been posted "Private Property—No Trespassing." Seidel's answer in the earlier action and his affidavit herein recited that he had requested the appellant not to park in that alley so as to obstruct access to Seidel's Restaurant by repairmen, and garbage and trash collectors. He set out that "on occasions," when appellant had refused to refrain from blocking the alley, Seidel had reported the "facts" to police for "appropriate" action. He denied the instigation of "wrongful or illegal action" against appellant, and his alternative motions in the District Court sought either dismissal or judgment as a matter of law.

Seidel has not alleged what "rights" he may have had to use the alley, upon what basis he claimed to be entitled to unobstructed access to the rear of Seidel's Restaurant, or how he may justify calling upon the police officers for "appropriate" action or whatever course they may have taken because of Seidel's complaints. Appellant had claimed that Seidel "willfully and maliciously instigated and inspired" the various steps thereafter taken by the police.

Thus, it would appear that a genuine issue of material fact has arisen in this critical area. Of course, Seidel's right to complete exoneration from any possible liability may yet be demonstrated, but grounds for that result have not been shown. If Seidel acted wrongfully, he may be liable,[19] but lacking an adequate record on this aspect, we express no final opinion on the point.

It may develop that there was here involved a public alley,[20] the use of which is governed by D.C.Code § 40–810 (1961) and District of Columbia Traffic & Motor Vehicle Regulations § 79(c) which provides:

"No person shall park a vehicle . . . otherwise than temporarily for the purpose of and while actually engaged in loading or unloading of

16. Cooper v. O'Connor, 69 App.D.C. 100, 105, 99 F.2d 135, 140, cert. denied, 305 U.S. 643, 59 S.Ct. 242, 83 L.Ed. 414 (1938); Laughlin v. Garnett, 78 U.S. App.D.C. 194, 138 F.2d 931, cert. denied, 322 U.S. 738, 64 S.Ct. 1055, 88 L.Ed. 1572 (1943).

17. Cooper v. O'Connor, supra note 16, 69 App.D.C. at 107, 108, 99 F.2d at 142, 143.

18. 82 U.S.App.D.C. 164, 168, 169, 163 F. 2d 838, 842, 843 (1947); cf. Barr v. Matteo, 360 U.S. 564, 569, 571, 572, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959); Jones v. Kennedy, 73 App.D.C. 292, 121

F.2d 40, cert. denied, 314 U.S. 665, 62 S.Ct. 130, 86 L.Ed. 532 (1941).

19. Hansen v. Nicoll, 40 App.D.C. 228, 236 (1913); cf. Ewald v. Lane, 70 App.D.C. 89, 90, 91, 104 F.2d 222, 223, 224 (1939).

20. It may well be the difference between a "public" and a "private" alley will be material here and dispositive of the remaining issue. See D.C.Code §§ 40–810, 1–614, 1–623 (1961). Compare Watson v. Carver, 27 App.D.C. 555 (1906). See also Barnard v. Commissioners of District of Columbia, 100 U.S.App.D.C. 404, 246 F.2d 685 (1957).

passengers or freight in any of the following places:

\*   \*   \*   \*   \*   \*

"6. In any public alley."

The judgment of the District Court had dismissed the action against the police-officer appellees and Seidel.[21] That judgment is reversed.

The case will be remanded to the District Court:

(1) with directions to enter summary judgment in favor of the police-officer appellees [22]; and

(2) as to Seidel, for such further proceedings as the parties may be advised.

---

21. Though an appellee, and before the court, Seidel has filed no brief here.

22. Fortier v. Hobby, 105 U.S.App.D.C. 6, 262 F.2d 924 (1959).