INTERNATIONAL UNION OF ELEC-
TRICAL, RADIO AND MACHINE
WORKERS, Affiliated with the Amer-
ican Federation of Labor and the Con-
gress of Industrial Organizations, Plain-
tiff,

v.

ITT FEDERAL LABORATORIES, a Di-
vision of International Telephone and
Telegraph Corporation, a Maryland
corp., Defendant.

Civ. A. No. 101–64.

United States District Court
D. New Jersey.

Aug. 25, 1964.

Kapelsohn, Lerner, Leuchter & Reitman, by Sidney Reitman, Newark, N. J., for plaintiff.

Carpenter, Bennett & Morrissey, by Thomas L. Morrissey, Newark, N. J., Seyfarth, Shaw, Fairweather & Geraldson, Chicago, Ill., by Matthew E. Murray and Richard M. Lyon, Chicago, Ill., of counsel, for defendant.

WORTENDYKE, District Judge.

This is a Declaratory Judgment action under 28 U.S.C. § 2201 et seq. The complaint alleges that a justiciable controversy exists between the parties. Jurisdiction is predicated upon 29 U.S.C. § 185. The plaintiff is an International Labor Union with its principal office in Washington, D. C. Affiliated therewith are Union Locals numbered 400, 447 and 1703, representing employees of the defendant. The defendant is a corporation of the State of Maryland and has principal places of business in the City of New York and in the Town of Nutley, the latter being in the State of New Jersey. The defendant is a party to collective bargaining agreements with each of the Union Locals aforesaid.

The complaint alleges that on October 3, 1961 Local 400 called a strike against the defendant and in the negotiations for settlement of the strike, the plaintiff participated. Those negotiations resulted in a written agreement, dated November 19, 1961, between the plaintiff and Local 400 on the one hand and the defendant on the other, by the terms of which "the collective bargaining agreements between [the parties] * * * which expired September 25, 1961" were extended to September 9, 1964, and the differences between the parties were composed. Upon ratification of the agreement by Local 400 on November 20, 1961, the strike was settled.

Paragraph XIV of the Strike Settlement Agreement reads as follows:

"XIV. The Wage Rates for employees other than Engineers shall be increased by an amount equal to seven cents (7¢) per hour effective the date of ratification and on the nearest Monday to the anniversary dates in 1962 and 1963. The Engineers shall receive increases in salaries equal to eleven cents (11¢) per hour effective on the same dates as the increases for the other employees.

"In addition, the Company shall establish a fund equal to two cents (2¢) per hour based on the average number of employees in the five bargaining units during the week following the week in which this agreement is ratified. This fund shall be subject to application by the Company and the International Union for the purpose of equalizing rates as between comparable job classifications in the three bargaining units. These sums shall be applied to wages."

The complaint charges that the defendant failed to establish the fund referred to in the Agreement in accordance with its undertaking therein expressed. Plaintiff accordingly seeks a declaration of its rights under the Agreement and a judgment requiring the defendant to establish the fund provided for therein.

The defendant has not answered in this case, but its previous motions (a) to dismiss the action under Rule 12(b) for failure to join Local 400 as an indispensible party plaintiff; and (b) for an order under Rule 19(b) requiring the joinder of Locals 447 and 1703 as necessary parties, were denied. Defendant now moves (a) for an order pursuant to Rule 12(b) (6) dismissing the action upon the ground that the complaint fails to state a claim against defendant upon which relief can be granted, and (b) for an order pursuant to Rule 56 for summary judgment in favor of defendant upon the ground that there is no genuine issue as to any material fact and that defendant is entitled to judgment as a matter of law.

In connection with the previous motions under Rules 12(b) and 19(b), affidavits were filed in behalf of the respective parties and the averments contained

in those affidavits are relied upon for the purposes of the pending motion for summary judgment.

In its brief in opposition to defendant's pending motions, the plaintiff argues that it is entitled to summary judgment against the defendant.

Defendant urges five grounds in support of its pending motions, viz.: (1) the establishment of the fund required by the agreement would be violative of Section 302 of the Labor-Management Relations Act, 1947, 29 U.S.C. § 186; (2) the undertaking to establish a fund mentioned in the agreement is unenforcible for (a) indefiniteness, and (b) lack of mutuality of remedy; (3) the contract is unenforcible by reason of the Statute of Frauds, N.J.S.A. 25:1–3, because not to be performed within a year; (4) plaintiff lacks standing to enforce the provisions of the agreement; (5) the action is premature and therefore fails to state a justiciable controversy under 28 U.S.C. § 2201.

Concededly plaintiff, through its affiliated locals, is a representative of employees of defendant, who are employed in industry affecting commerce. See also Conditioned Air & Refrigeration Co. v. Plumbing and Pipe Fitting Labor etc., Trust, D.C.Cal.1956, 159 F.Supp. 887, affd. 9 Cir. 1958, 253 F.2d 457. 29 U.S.C. § 186(a) declares unlawful payment or delivery or agreement to pay or deliver by any employer, or person acting in the interest of an employer, of any money or other thing of value (1) to any representative of any of his employees who are employed in an industry affecting commerce; (2) to any labor organization or any officer or employee thereof, which represents, seeks to represent, or would admit to membership any of the employees of the employer who are employed in an industry affecting commerce. Subsection (b) renders unlawful the receipt or acceptance, or agreement to receive or accept any money or other thing of value prohibited by subsection (a). Subsection (c) renders the provisions of the section inapplicable "(1) with respect to any money or other thing of value

payable by an employer to any representative who is an employee or former employee of such employer, as compensation for, or by reason of, his services as an employee of such employer; (2) with respect to the payment or delivery of any money or other thing of value in satisfaction of a judgment of any court or a decision or award of an arbitrator or impartial chairman or in compromise, adjustment, settlement or release of any claim, complaint, grievance, or dispute in the absence of fraud or duress; (3) with respect to the sale or purchase of an article or commodity at the prevailing market price in the regular course of business; (4) with respect to money deducted from the wages of employees in payment of membership dues in a labor organization: * * *; or (5) with respect to money or other thing of value paid to a trust fund established by such representative, for the sole and exclusive benefit of the employees of such employer, and their families and dependents * * *." Subdivision (d) of that section provides penalties for violation of the provisions of the section; subdivision (e) invests the United States District Courts with jurisdiction to restrain violations thereof; and subdivisions (f) and (g) are irrelevant here.

Defendant (hereafter ITT) argues that the Strike Settlement Agreement in suit, which is between an employer and a labor organization representing the employer's employees, invests the labor organization with veto power over the disbursement of the 2¢ equalization fund provided for in Paragraph XIV of the Agreement, and that the establishment of the fund is prohibited by Section 302 of the Act, 29 U.S.C. § 186(a) (2).

In United States v. Ryan, 1956, 350 U.S. 299, 76 S.Ct. 400, 100 L.Ed. 335, relied on by ITT, a member of a wage scale committee of an international union which, with its affiliated groups, were recognized collective-bargaining agents, was held to be a "representative" of the employees within the meaning of Section 302(b) of the Labor-Management Relations Act, 1947, 29 U.S.C. § 141 et seq.

The defendants' receipt of periodic payments from the employer was held to violate the proscription of the Section. More recently (1964), the Second Circuit Court of Appeals held in International Longshoremen's Association v. Seatrain Lines, Inc., et al., 326 F.2d 916, followed Ryan, supra, in holding that receipt of moneys from the defendant employers by the plaintiff labor organization representing defendants' employees, would violate Section 302 of the Act. The Seatrain case also held that a declaratory judgment might appropriately be sought by the I.L.A. as to its right to receive such moneys under an agreement entered into between the labor organization and the employer. The employers had agreed to pay to I.L.A. 28¢ per gross ton of "containerized" freight handled by the employees, into a fund to be administered by trustees appointed by I.L.A. and the employers. I.L.A. had demanded that part of the fund be paid to *it* as compensation for its loss of revenue. The employers rejected this demand upon the ground that it would violate Section 302. As a compromise, the parties agreed that 10% of the moneys to be paid to the trustee would be deposited in escrow pending a determination of the legality of I.L.A.'s demand. The form of action under the Declaratory Judgments Act was held appropriate, but the agreement was declared violative of Section 302(b) of the Labor-Management Relations Act because it was "for the payment of a sum of money by the employer to the I.L.A."

In Mechanical Association, etc. v. Local Union 420, etc., 3 Cir. 1959, 265 F.2d 607, an association of employers entered into collective bargaining agreements with certain local unions. Those agreements provided that each employer member of the association should contribute 19¢ for each hour worked by each of its employees, to a fund which was deposited in a bank and was to be administered by a joint board of trustees comprised of six members, three appointed by the association and three by the union. The agreements further provided that a declaration of trust would be executed by the parties, but a dispute over the legality of the joint board provisions prevented the execution of the declaration of trust. Thereupon the parties entered into a supplemental agreement which provided that the bank in which the fund was deposited should turn over to the trustees of other existing funds 16½¢ out of the 19¢ contribution, to be administered in accordance with preexisting trust agreements. The remaining 2½¢ was to be held in escrow pending a determination of the legality of the joint administration of the fund. It was agreed that if the establishment of the fund was *per se* unlawful, the money was to be returned to the contributors. The Court of Appeals affirmed the District Court (167 F.Supp. 35) in holding that joint administration of the fund in question as provided in the agreements, was violative of Section 302, but if the fund were to be administered solely by the employers, who alone contributed thereto, it would not be violative of that Section. At p. 611 of his opinion in Mechanical Contractors, supra, Judge Staley says:

"A veto power over the uses to which funds may be put certainly constitutes an effective control of the fund. Such control of the use of the funds contributed by employers is comprehended within the broad statutory [proscriptive] language utilized by Congress."

The phrase in the paragraph of the Strike Settlement Agreement which is the subject of conflicting contentions in the case before me, that the fund to be established by the employer "shall be subject to application by the Company and the International Union for the purpose of equalizing rates as between comparable job classifications in the three bargaining units." likewise vests in the Union an effective share in the control of the fund to be established by the employer. Subsections (a) and (b) of Section 302 forbid *agreements to pay* and *agreements to receive and accept* payments by employers and representatives of their employees, as well as the payments and

receipt and acceptance of payments of money or other thing of value. While payments from the contemplated 2¢ equalization fund would ultimately be received as wage increments by individual employees of ITT, the International Union, as representative of those employees would have the right, by the terms of the agreement, to share with the employer in the determination of the identity of the recipients, and the quantum and periodicity of the payment to be received by each. In short, the agreement would vest in the Union the power to veto the employer's disposition of the fund.

In Conditioned Air and Refrigeration Co., et al., v. Plumbing and Pipe Fitting Labor-Management Relations Trust, et al., D.C.Cal.1956, 159 F.Supp. 887, affd. per curiam, 9 Cir. 1958, 253 F.2d 427, the District Court opinion concludes, p. 899, that "the prohibition in Section 302 forbidding the payment of money or other thing of value to a representative, or the receipt thereof by a representative, is not limited to cash or tangible property. The expression, 'other thing of value' would include the benefits flowing from the use or application of the money paid. Under the Trust in question, the payments required to be made by the plaintiffs [employers] are to be devoted to enforcement of the collective bargaining agreements, to protect wages, hours of labor, conditions of employment, * * *. [T]his constitutes payment of a thing of value to [the] Local * * *. The fact that the control of the Trust is equally divided between the employers and the representatives of the employees does not change the situation in view of the provisions of the Trust agreement." In distinguishing United Marine Division I.L.A. Local 33 v. Essex Transportation Co., 3 Cir. 1954, 216 F.2d 410, the District Court in Conditioned Air, at p. 900 of 159 F.Supp. points out that in the Essex case payments by the employer were to be made to trustees of a welfare fund provided for by a Trust "in strict compliance with the requirement of Section 302(c) (5)," whereas the Trust involved in Conditioned Air "does not so comply."

The plaintiff International here would sustain the legality of the agreement in suit upon the authority of South Louisiana Chapter, Inc., etc. v. Local Union No. 130, etc., D.C.La.1959, 177 F.Supp. 432. In that case an employers' association sought an adjudication that a certain trust agreement between it and a labor union be declared null and void and that the union and trustees of the fund provided for in the agreement be enjoined from receiving or disbursing any moneys under the trust agreement. That agreement provided that there be established a fund for the training of apprentices in the electrical industry, and the improvement of the wages of journeymen. The fund was to be constituted by contributions of 1½¢ per man-hour worked for all employer members in the association, and any other employer who might sign the agreement. The fund was to be administered by a board of eight trustees, four to be selected by the association and four by the union. However, following the decision of the Ninth Circuit Court of Appeals, in 1957, in Sheet Metal Contractors' Association, etc. v. Sheet Metal Workers' International Association, 9 Cir., 248 F.2d 307, which declared that a trust fund administered by a joint Labor-Management board was in violation of the critical section, the parties to the agreement in South Louisiana Chapter named a bank as trustee for the receipt and disbursement of the funds, and jointly created a committee to administer the fund. The action was instituted by the employers' union to have the agreement declared void, to enjoin the union and trustee of the fund from receiving or disbursing any money under the agreement, and to require the trustee of the fund to account. The Court held the agreement valid in that its sole purpose was the training of apprentices. It concluded that the provisions of the agreement would not invade other areas of management relations or require the joint board to perform the functions of a labor organization. The Court reasoned

that "as long as such 'representative' does not receive from the employer 'any money or other thing of value,' there is no violation of Section 302."

In the case of Local 2 Operative Plasterers, etc. v. Paramount Plastering, Inc., 9 Cir. 1962, 310 F.2d 179, cert. den. 372 U.S. 944, 83 S.Ct. 935, 9 L.Ed.2d 969 the Court pointed out, at p. 186, that "[c]osts of apprenticeship training had been held a lawful purpose in South Louisiana Chapter * * *" and that " 'Congress * * * has been required to spell out its intent in order that courts will not strike down, as illegal, labor and management-agreements, such as the one in suit, which promote harmony in an industry and redound to the benefit of the employer and employee alike.' But until Congress has spelled out such an intent, with respect to the activities specifically exempted, it is not the function of the courts to create additional exemptions. * * * Congress proscribed certain practices and permitted others in labor-management agreements, and permitted 'joint trust funds for certain purposes only.' " The fund to be created under the agreement in suit would be a trust fund, but subject to administration, for as yet undisclosed purposes, by the plaintiff International and the defendant employer. Such a fund is not authorized by Section 302.

ITT insists, however, that because the purpose for which the fund mentioned in the Strike Settlement Agreement is not within the expressed exceptions to the proscriptions of Section 302, the agreement must be deemed to provide for a violation of the Section because the fund is to be administered jointly by the employer and the plaintiff labor organization. Citing Mechanical Contractors, supra, and Bey v. Muldoon, D.C.Pa.1962, 217 F.Supp. 401, ITT argued that "the proscribed act of 'paying or agreeing to pay * * * to any labor organization' [Section 302(a)] when read contextually has reference not only to direct payments to Unions and Union officials, but also to payments into any fund over which the Union has control." In Mechanical Con-

tractors, supra, 265 F.2d at p. 611, Judge Staley summarized the essence of Section 302 in the following language:

"No fund derived from employer contributions may be administered by persons designated by a union unless the fund meets the standards set forth in Section 302(c) (5)."

It is obvious that the agreement which we are considering contemplates, if it does not expressly direct, that payments from the fund to be established may be made only with the joint approval of the employer and the plaintiff International. If this provision is to be equated with the statement that the fund is to be administered by persons designated by the International, either jointly with or to the exclusion of representatives of the employer, then by Judge Staley's pronouncement, the establishment of the fund could serve no lawful purpose, and therefore the defendant should not be required to establish it.

In the Paramount Plastering case, supra, the agreement between the association of employers and the defendant unions called for the payment by the employers to a corporation representing its employees of 4¾¢ for each hour a man is to receive pay, pursuant to the terms of a collective bargaining agreement. The Court of Appeals affirmed the District Court in holding that the payments provided for by the terms of the agreement between the association of employers and the corporation representing their employees was violative of the provisions of Section 302, and that the action was appropriately instituted under the Declaratory Judgments Act.

In Mechanical Contractors, supra, the Third Circuit held that the union members of a joint board to administer a labor-management industrial fund to which the association of contractors agreed to contribute, were representatives of the employees of the members of the association within the proscription contained in Section 302. The agreement in that case required all employers to contribute 19¢ for each hour worked by

each of its employees to a fund deposited in a stipulated bank to be administered by a joint board of trustees consisting of three members to be appointed by the contractors' association and three by the union. Mechanical Contractors, supra, as well as Paramount Plastering, supra, followed United States v. Ryan, 1956, 350 U.S. 299, 76 S.Ct. 400, 100 L.Ed. 335, which held that the term "representative" used in Section 302 includes any person authorized by the employees to act for them in dealings with their employers and that a narrow reading of the term would substantially defeat the Congressional purpose.

In the case at bar the fund contemplated by paragraph XIV is to be established by the defendant employer "subject to application by the Company and the International Union for the purpose of equalizing rates as between comparable job classifications in the three bargaining units." The agreement in suit fails to prescribe the mechanics by which the fund is to be established and applied. Assuming that the "establishment" of the fund contemplates setting it up on the books of the employer, there is no provision for the deposit of the amount so set up in any specific or separate bank account under the power of withdrawal by either of the parties, and no method is provided for the application of the fund "by the Company and the International Union" in the equalization process. As recently as May 1, 1963, the president of Local 400 wrote to the president of the plaintiff International pointing out that the 2¢ equalization fund provision of the 1961 Strike Settlement Agreement was then still an unresolved problem and requesting that the International call all interested union parties together either separately or collectively, "for testimony on" the subject.

On the other hand, in his affidavit of April 20, 1964, the president of Local 400

states in part, with respect to the establishment of the fund referred to in the Strike Settlement Agreement, and in the complaint herein, that "what was left unresolved was the application of this fund to effect equalization of rates as between comparable job classifications as referred to in the agreement. The letter from Weihrauch to Carey dated May 1, 1963 * * * in referring to what was unresolved in the inequity fund, was referring to the application and not establishment of the fund. Agreement had been reached as to establishment of a fund in a dollar amount, computed as provided in Article XIV * * *."

The provisions of the Strike Settlement Agreement which refer to the equalization fund fail to indicate when, upon what basis, in what respective amounts, by whom or to whom moneys from the fund are to be paid. The relationship of the respective prospective payors and payees to the parties to the agreement is not stated therein. This indefiniteness and incompleteness of the Agreement make it impossible to effectively require specific performance of its terms. Nothing is said as to how the fund is to be established or administered, except that it "shall be subject to application by the Company and the International Union". Neither is the nature or extent of the participation of each of the parties to the agreement in the determination of the identity of the recipients or amounts of payments from the fund either specified in or inferable from the language of the Agreement.[1]

The absence of any time limitation in the Agreement for the establishment of the fund is not to be construed as precluding the performance of the Agreement, assuming that it is enforcible, and that it is susceptible of performance within the year contemplated by N.J.S.A. 25:1–5. Consequently that stat-

---

1. During the oral argument of this motion counsel for the plaintiff repeatedly and emphatically stated that plaintiff in this action merely sought to compel the defendant to set up a fund in accordance with the Agreement; and after the amount of that fund had been disclosed, plaintiff, or its affiliated locals, would negotiate with defendant respecting its administration and application.

ute does not avail the defendant as a defense to the present action.

■ With respect to the contention of the defendant that the plaintiff lacks standing to enforce the provisions of the Strike Settlement Agreement, the Seatrain case, supra, is precedent to the contrary.

A copy of the complete Strike Settlement Agreement is before me. It expressly provides that the collective bargaining agreements between the parties, which expired September 25, 1961, shall be continued in full force and effect for a term running from the date of ratification to September 9, 1964, except as modified by the Strike Settlement Agreement. The collective bargaining agreements so extended provided for arbitration and for the selection and replacement of an arbitrator. The agreement recites that it is recognized that for purposes of efficiency it may become necessary to move work from the bargaining unit of one of the facilities of the employer to the bargaining unit of another, and provides that when this occurs, it shall be subject to rules established by the International and the Company. Because the parties were eager to terminate the strike as rapidly as possibe, they agreed to defer establishment of specific rules to be applied when the inter-unit movement of work occurred. The parties agreed to meet to discuss these rules, and if, after sixty days, there were any differences as to the rules to be established, either party might request the arbitrator to resolve such differences, and his award would be final and binding.

It appears to the Court that the Strike Settlement Agreement, by its very terms, is incomplete, particularly with regard to the establishment and application of the equalization fund. It further appears that the parties expressly contemplated that they would further negotiate after they had secured the settlement of the strike, for the purpose of setting up rules relating to the transfer of labor between units and the application of the contemplated equalization fund. Evidently the parties have neglected to further negotiate as they agreed, or their negotiations, if any, have proved unproductive. Under such circumstances, by the terms of the Strike Settlement Agreement the parties were required to submit their problem to the arbitrator. There is nothing before the Court to indicate what, if any, efforts have been made to adopt the rules necessary to render effective and enforcible the bare contract provision that an equalization fund be established. Accordingly, defendant's motion to dismiss the action on the ground that the complaint fails to state a claim against the defendant upon which relief can be granted must prevail.

■■ Joined with its motion to dismiss under Rule 12(b) (6) is defendant's motion for summary judgment under Rule 56(b) for summary judgment. Rule 12(b) provides that "[i]f, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, * * *." Decision in favor of movant on the Rule 12 (b) (6) motion does not preclude consideration of the motion under Rule 56 (b). Gager v. "Bob Seidel", 1962, 112 U.S.App.D.C. 135, 300 F.2d 727, 731. Finding no genuine issue as to any material fact, and that defendant is entitled to judgment as a matter of law that the establishment of the equalization fund provided for in Paragraph XIV of the Strike Settlement Agreement in suit is violative of Section 302, defendant's motion for summary judgment is granted, and plaintiff's cross-motion for summary judgment is denied.

An order may be presented in conformity with the conclusions expressed in this opinion.