**Melvin CARTER, Appellant**

v.

**John R. CARLSON et al.**

**No. 23225.**

United States Court of Appeals, District of Columbia Circuit.

Argued June 12, 1970.

Decided July 23, 1971.

Nichols, Judge, filed concurring opinion.

**360**

Mr. Warren K. Kaplan, Washington, D. C., with whom Mr. Ralph J. Temple, Washington, D. C., American Civil Liberties Union Fund, was on the brief, for appellant.

David P. Sutton, Asst. Corporation Counsel, for appellees. Messrs. Hubert B. Pair, Acting Corporation Counsel, Richard W. Barton and Ted D. Kuemmerling, Asst. Corporation Counsel, entered appearances for appellees.

Before BAZELON, Chief Judge, ROBINSON, Circuit Judge, and NICHOLS *, Judge, United States Court of Claims.

BAZELON, Chief Judge.

This is an appeal from the dismissal of a complaint which raises several important questions concerning the remedies for the torts of a police officer. For the purpose of testing the sufficiency of the complaint, the court must of course accept the allegations as true.[1]

The complaint alleged that in 1968 one police officer Carlson arrested appellant Carter without probable cause in a bar and, as Carter was being held by two other officers, proceeded to beat him with brass knuckles. The complaint further alleged that Carlson's precinct captain, and the Chief of Police, and the District of Columbia each negligently failed to train, instruct, supervise, and control Carlson with regard to the circumstances in which (1) an arrest may be made, and (2) various degrees of force may be used in making an arrest.

---

* Sitting by designation pursuant to Title 28 U.S.Code, Section 293(a).

1. Gardner v. Toilet Goods Ass'n, 387 U.S. 167, 172, 87 S.Ct. 1526, 18 L.Ed.2d 704 (1967); Clark v. Uebersee Finanz-Korporation, 332 U.S. 480, 482, 68 S.Ct. 174, 92 L.Ed. 88 (1947); 2A J. Moore, Federal Practice § 12.08 (1968).

Carter sought to hold Carlson liable for assault and battery, or for negligence in making an arrest. He sought to hold precinct captain Prete and Police Chief Layton liable for negligence in failing to give Carlson adequate training and supervision. Finally, he sought to hold the District of Columbia liable either for its own negligence in failing to train and supervise Carlson, or for the torts of Carlson, Prete, and Layton on a theory of *respondeat superior*. In each case, he asserted both a common law tort theory of liability, and an action for deprivation of civil rights under 42 U.S.C. § 1983.

Officer Carlson was never found for service of process. Captain Prete and Chief Layton moved to dismiss the complaint on the ground that it failed to state a claim for which relief can be granted. Their supporting memorandum argued that no tort on their part had been alleged, and that in any event they were protected by the doctrine of official immunity. The District of Columbia moved to dismiss the complaint for failure to state a claim, and also on the ground of sovereign immunity. The district court dismissed the complaint against all defendants without explanation.

■ The common law liability of the individual officers and of the District for police misconduct is similar in many respects to their liability under § 1983, but the two theories of liability are by no means coextensive. The federal statute provides:[2]

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

When a police officer makes an arrest without probable cause, or uses excessive force in making an arrest, his action is sufficiently cloaked with official authority to satisfy the limitation of the statute to wrongs performed under color of law.[3] Such conduct invades an interest ordinarily protected both by the common law of torts, and by the Constitutional guarantee against unreasonable searches and seizures. The common law, however, may create immunities that do not apply to an action under § 1983. Conversely, the developing law of torts may extend potential liability to some defendants beyond the reach of the federal statute. Accordingly, for each ground of liability asserted in the complaint, it will be necessary to consider separately the relevant principles at common law and under § 1983.

## I. THE INDIVIDUAL OFFICERS

■ We start with the premise that a government officer, like any other person, is liable at common law for his torts, even if they are committed within the scope of his employment.[4] A government officer, however, is protected by the doctrine of official immunity if the alleged tort was committed in the performance of a "discretionary" rather than a "ministerial" function.[5]

2. Civil Rights Act of 1871, § 1, R.S. § 1979, 42 U.S.C. § 1983 (1964).

3. Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); *see* Pierson v. Ray, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967); Screws v. United States, 325 U.S. 91, 111, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945). Acts under color of the law of the District of Columbia are under color of the law of a "State or Territory" for the purpose of § 1983. Hurd v. Hodge, 334 U.S. 24, 31, 68 S.Ct.

847, 92 L.Ed. 1187 (1948); Sewell v. Pegelow, 291 F.2d 196 (4th Cir. 1961).

4. *See* K. Davis, Administrative Law Treatise § 26.02 (1958, Supp. 1970); Restatement (Second) of Agency § 343 (1958).

5. Barr v. Matteo, 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 855 (1959); David v. Cohen, 132 U.S.App.D.C. 333, 407 F.2d 1268 (1969). While many jurisdictions recognize official immunity only for negligence, others extend immunity to malicious acts as well, so long as they fall

■ The distinction between discretionary and ministerial functions in this context must be drawn primarily with reference to its purpose. Official immunity, like the related doctrine of sovereign immunity,[6] is designed to protect government officers from the inhibiting fear of damage suits, and the time-consuming duty to defend them; its purpose is to encourage "fearless, vigorous, and effective administration of policies of government." Barr v. Matteo, 360 U.S. 564, 571, 79 S.Ct. 1335, 1339, 3 L.Ed.2d 855 (1959). Accordingly, in determining whether a particular government function falls within the scope of official immunity, it does not suffice to consider simply whether the officer has "discretion" in the sense that he exercises judgment in choosing among alternative courses of action. The proper approach is to consider the precise function at issue, and to determine whether an officer is likely to be unduly inhibited in the performance of that function by the threat of liability for tortious conduct.[7]

■ Under this standard, it is clear that an action could be maintained against Officer Carlson at common law for the conduct alleged in the complaint. An arrest without probable cause constitutes a tort at common law, as does the use of excessive force to make an arrest.[8] And the law is clear that an

---

within the general scope of a discretionary function. *Compare, e. g.,* Bedrock Foundations, Inc. v. Geo. H. Brewster & Son, 31 N.J. 124, 140, 155 A.2d 536, 545 (1959) (immunity limited to negligence) *with* Adams v. Tatsch, 68 N.M. 446, 362 P.2d 984 (1961) (immunity for malice). The immunity of federal officers is governed by federal common law, Howard v. Lyons, 360 U.S. 593, 597, 79 S.Ct. 1331, 3 L.Ed.2d 1454 (1959), and extends to malicious as well as negligent acts, Barr v. Matteo, *supra.*

It is not clear whether the District of Columbia follows the federal rule. The courts have not expressly distinguished officers of the District of Columbia from federal officers for purposes of official immunity. *See, e. g.,* Fortier v. Hobby, 105 U.S.App.D.C. 6, 262 F.2d 924 (1959) (federal and local welfare officials); Laughlin v. Garnett, 78 U.S.App.D.C. 194, 138 F.2d 931 (1943), cert. denied, 322 U.S. 738, 64 S.Ct. 1055, 88 L.Ed. 1572 (1944) (federal prosecutor and local police officer). Nevertheless, it appears that officers of the District, unlike federal officers, may lose their immunity when there are allegations of malice. Gager v. "Bob Seidel," 112 U.S.App.D.C. 135, 139–140, 300 F.2d 727, 731–732 (dictum), cert. denied, 370 U.S. 959, 82 S.Ct. 1612, 8 L.Ed.2d 825 (1962). In this case, of course, there are no allegations of malice on the part of the supervisory officers; and Officer Carlson, whose duties were ministerial, lacks immunity in any event. Consequently, any distinction between the immunity of federal officers and that of local officers would seem to be irrelevant for present purposes.

6. *See* p. 365, *infra.*

7. This approach to the problem of discretion and immunity has been elaborated by the California Supreme Court in a thoughtful opinion, in the case of Johnson v. State, 69 Cal.2d 782, 73 Cal. Rptr. 240, 447 P.2d 352 (1968). We agree with that court in refusing "to enmesh ourselves deeply in the semantic thicket of attempting to determine, as a purely literal matter, 'where the ministerial and imperative duties end and the discretionary powers begin.' " *Id.* at 788, 73 Cal.Rptr. at 245, 447 P.2d at 357, *quoting* Ham v. County of Los Angeles, 46 Cal.App. 148, 162, 189 P. 462, 468 (1920). Instead we think the inquiry should be guided by the underlying purposes of the immunity doctrine. We have already adopted essentially this approach to the immunity of government units, *see* Spencer v. General Hospital, 138 U.S. App.D.C. 48, 425 F.2d 479 (1969) (*en banc*); Graham v. District of Columbia, 139 U.S.App.D.C. 378, 433 F.2d 536 (1970). It is equally appropriate when the issue is the immunity of government officers.

8. Pierson v. Ray, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967); Nesmith v. Alford, 318 F.2d 110 (5th Cir. 1963), cert. denied, 375 U.S. 975, 84 S.Ct. 489, 11 L.Ed.2d 420 (1964); Cohen v. Norris, 300 F.2d 24 (9th Cir. 1962) (*en banc*); Craig v. Cox, 171 A.2d 259 (D.C.Mun. App.1961), aff'd, 113 U.S.App.D.C. 78, 304 F.2d 954 (1962); *see* K. Davis, Administrative Law Treatise § 26.03 (1958, Supp.1970); Restatement (Second) of Torts §§ 121, 132 (1965).

arresting officer has no immunity from suit for torts committed in the course of making an arrest.[9]

Officer Carlson would likewise be subject to suit under the federal statute. An arrest without probable cause, or an arrest made with excessive force, constitutes an unreasonable seizure in violation of the Fourth Amendment.[10] Thus the complaint alleges that Officer Carlson deprived Mr. Carter of a constitutional right, and it states a cause of action under § 1983. Like the common law, the federal statute recognizes no official immunity for the arresting officer.[11]

The arresting officer, however, is not at present a party to this litigation. Accordingly, we turn to the more difficult question of the possible liability of Carlson's superior officers. The ·claim against Chief Layton and Captain Prete is based on the allegation that they were each negligent in the exercise of duties to train, instruct, supervise, and control Carlson. At this stage, of course, we have no way of knowing the extent, if any, to which such duties may have rested upon them instead of others. Likewise, we cannot now determine whether a breach of such duties occurred, or had any causal relationship to appellant's injuries. We are confronted only with the threshold claim that the suit is barred by the doctrine of official immunity.

██ In our view, even that claim cannot be resolved in this case on the basis of the bare pleadings before us. The functions of training, supervising, and controlling police officers subsume a variety of distinct duties, conceivably incumbent in some degree on a variety of police personnel. No doubt some of these duties should be regarded as discretionary for the purposes of official immunity, but others are clearly ministerial for that purpose.[12] The relevant duties

---

9. *See* sources cited note 8 *supra.* Official immunity does not extend to the arresting officer, despite the fact that a high degree of discretion is clearly involved in deciding when and how to make an arrest without a warrant. *See e. g.,* Sherbutte v. Marine City, 374 Mich. 48, 130 N.W.2d 920 (1964), explicitly rejecting the argument that an arrest is discretionary for the purposes of official immunity. This rule presumably reflects a long-standing judgment that the threat of damage suits does not significantly impede the effective operation of a police department, when the impediment is weighed against the public interest in a tort remedy for police misconduct. *See* Jaffe, Suits Against Governments and Officers: Damage Actions, 77 Harv.L.Rev. 209, 218–219 (1963).

While the arresting officer has no immunity, he may nevertheless assert, as a defense on the merits, that he made the arrest in good faith, with probable cause, under a statute that he reasonably believed to be valid. Pierson v. Ray, 386 U.S. at 555–558, 87 S.Ct. 1213.

10. Pierson v. Ray, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967) ; Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed. 2d 492 (1961) ; Nesmith v. Alford, 318 F.2d 110 (5th Cir. 1963), cert. denied, 375 U.S. 975, 84 S.Ct. 489, 11 L.Ed.2d 420 (1964) ; Cohen v. Norris, 300 F.2d 24 (9th Cir. 1962) (*en banc*). Indeed, it now appears that, wholly apart from statutory remedies, the Fourth Amendment itself gives rise to a federal cause of action for damages consequent upon an unconstitutional arrest or search, at least when the violation is committed by a federal officer. Bivens v. Six Unknown Named Agents, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

11. *See* cases cited note 10 *supra.*

12. For cases holding supervisory officers subject to suit, though not always ultimately liable on the merits for the particular transgressions involved, *see e. g.,* Build of Buffalo, Inc. v. Sedita, 441 F.2d 284 (2d Cir. 1971) (mayor, police comm'r) ; Roberts v. Williams (5th Cir. No. 28,829, Apr. 1, 1971) (slip op. at 6–20) (Nichols, J., sitting by designation) (prison superintendent) ; Sostre v. McGinnis, 442 F.2d 178, 189–190, 205 n. 51, 206–207 (2d Cir. 1971) (*en banc*) (state comm'r of corrections) ; Anderson v. Nosser, 438 F.2d 183 (5th Cir. 1971), rehearing *en banc* granted, June 16, 1971 (mayor, public safety comm'r, police chief, fire chief, pentientiary superintendent) ; Sheridan v. Williams, 333 F.2d 581 (9th Cir. 1964) (police chief) ; Nesmith v. Alford, 318 F.2d 110 (5th Cir. 1963), cert. denied, 375 U.S. 975, 84 S.Ct. 489, 11 L.Ed.2d 420 (1964) (police comm'r, police chief) ; Fernelius v. Pierce, 22 Cal. 2d 226, 138 P.2d 12 (1943) (city manager, police chief).

of each supervisory officer in this case must be spelled out with much greater specificity before the issue of his immunity can be resolved, and procedures by which that may be done are available to both sides in this litigation. Either Chief Layton or Captain Prete will prevail in his claim of immunity if he can establish that his responsibility, if any, for the training and supervision of Officer Carlson was wholly discretionary in character.[13] He may be able to establish that fact by reference to police department regulations delegating the crucial responsibility to another officer, or by means of uncontroverted affidavits in support of a motion for summary judgment.[14] Alternatively, Mr. Carter may be able to defeat one or both claims of official immunity after he has had the opportunity through pretrial discovery to ascertain how the relevant responsibilities are allocated within the police department, and how, if at all, they were fulfilled in this case. When the necessary factual information emerges, either officer may of course again invoke his claim of immunity;[15]

Fernelius v. Pierce, 22 Cal.2d 226, 138 P.2d 12 (1943) (city manager, police chief).

13. With respect to the general duties of training and supervision it may well be that the responsibilities of Chief Layton fall within the scope of official immunity, while those of Captain Prete do not. Both officers might be brought outside the protection of that doctrine, however, if appellant can sustain the allegations contained in a proposed amended complaint which he filed with this court. That proposed amendment alleges that both Prete and Layton knew, or should have known, that Carlson was likely to use excessive force in making an arrest, and in particular that he was likely to use brass knuckles. In that case, failure to take corrective action might well be negligence in the performance of a ministerial function, outside the protection of official immunity. The proposed amendment, of course, should be submitted in the first instance to the trial court on remand, to be considered in light of the liberal terms of Fed.R.Civ.P. 15(a).

14. This was the course taken in David v. Cohen, 132 U.S.App.D.C. 333, 336, 407 F.2d 1268, 1271 (1969). In that case a collection officer of the Internal Revenue Service had erroneously served a notice of levy for the payment of back taxes which had in fact already been paid. The taxpayer filed suit against, *inter alia,* the Commissioner of Internal Revenue. The Commissioner claimed official immunity, and the trial court granted his motion for summary judgment on that basis. He submitted a Treasury Regulation and an uncontroverted affidavit to establish that he had delegated to subordinate officers all direct responsibility for issuing levies. In affirming the ruling below, this court concluded that if the Commissioner was in any way negligent with respect to the levy in question, that negligence could have occurred only in the performance of his general duty to supervise the operations of the agency, a duty properly treated as discretionary and immune from suit.

15. *See* Graham v. District of Columbia, 139 U.S.App.D.C. 378, 433 F.2d 536 (1970) (pleadings insufficient to permit resolution of claim of sovereign immunity); Kisielewski v. State, 68 N.J.Super. 258, 172 A.2d 203 (App.Div.), pet. for certification denied, 36 N.J. 144, 174 A.2d 927 (1961).

The author of this opinion believes that it would greatly simplify analysis to eliminate the various doctrines of immunity, and to weigh the degree of discretion required in the performance of a particular governmental function as a factor bearing solely on the ultimate question of liability. *See* Elgin v. District of Columbia, 119 U.S.App.D.C. 116, 121, 337 F.2d 152, 157 (1964) (Bazelon, C. J., concurring); *accord,* Spencer v. General Hospital, 138 U.S.App.D.C. 48, 58–59, 425 F.2d 479, 489–490 (1969) (Wright, J., concurring).

In his view the doctrine of immunity is unnecessary to protect the government officer from inappropriate substantive liability, and it is increasingly ineffective to protect him from the mere harassment of litigation. With respect to the question of ultimate liability, he believes that the substantive law of torts is sufficient to protect the officer from liability for conduct that is reasonable in the circumstances. *See, e. g.,* Roberts v. Williams, *supra* note 12, slip op. at 27–32 (county supervisors); Sostre v. McGinnis, *supra* note 12, 442 F.2d at 189–190, 205 n. 51, 206–207 (state comm'r of correction); Anderson v. Nosser, *supra* note 12, 438 F.2d at 199–202 (mayor and comm'r of public safety);

in the absence of the relevant information, however, it was error to dismiss the common law claims against the officers.

■ Even if Captain Prete or Chief Layton is protected by official immunity from suit at common law, they are both subject to suit under § 1983 for any negligent breach of duty that may have caused appellant to be subjected to a deprivation of constitutional rights. Indeed, Mr. Justice Frankfurter maintained that § 1983 was designed for precisely such a case, i. e., the case in which the State shields a police officer from liability for conduct which would subject a private citizen to liability.[16] While the Supreme Court has read into the statute immunity for legislators[17] and judges,[18] it has not read into the statute a broad common law immunity for all government officers exercising discretionary functions.[19] In particular, various supervisory officers have been held subject to suit under § 1983 for negligence in supervising their subordinates.[20]

In Roberts v. Williams, the Fifth Circuit affirmed a judgment against a prison superintendent for injuries resulting from the careless use of a shotgun by a prisoner-guard, or "trusty."

The superintendent's liability was based on the finding that he had negligently failed to train or supervise the guard in the safe use of the weapon. (No. 28,829, Apr. 1, 1971) (slip opinion at 6–20). Similarly in this case appellant will be entitled to prevail if he can show that Captain Prete or Chief Layton was negligent in performing his own duty to supervise or train Officer Carlson, and that the negligence caused appellant to be deprived by Carlson of his constitutional rights. The showing may well be difficult, but if it succeeds then no local rule of immunity can bar recovery under the federal statute.

## II. THE DISTRICT OF COLUMBIA

We turn now to appellant's claim against the government of the District of Columbia. That claim may rest on a theory of vicarious liability for the torts of the individual police officers, or on the theory that the District itself was negligent in the performance of its own duty to supervise and control police officers. In either case, the first question is whether the District is protected from suit by the doctrine of sovereign or governmental immunity.

■ Sovereign immunity serves essentially the same function as the dis-

Orvis v. Brickman, 90 U.S.App.D.C. 266, 196 F.2d 762 (1952) (D.C. Mental Health Comm'rs, D.C. police officer). And with respect to the question of mere litigation, he questions the utility of the doctrine of immunity as a threshold screening device if, as in this case, it turns on facts that may be virtually identical to the facts that control the ultimate question of liability. As this court observed in Graham v. District of Columbia, supra: "If [the necessary particularity] is not developed until trial the defense of sovereign immunity will be closely akin to a motion for a directed verdict on the merits * * *." 139 U.S.App.D.C. at 379, 433 F.2d at 537.

16. In his view, that state shield of immunity is what brings the officer's conduct "under color of law" as required by § 1983. Monroe v. Pape, 365 U.S. 167, 211, 238, 242–243, 245–246, 255, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961) (Frankfurter, J., dissenting).

17. Tenney v. Brandhove, 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951).

18. Pierson v. Ray, 386 U.S. 547, 553–555, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967).

19. Several federal courts have held that official immunity is more limited under § 1983 and related statutes than at common law. E. g., Roberts v. Williams, (5th Cir. No. 28,829, Apr. 1, 1971) (slip op. at 26–27); McLaughlin v. Tilendis, 398 F.2d 287, 290–291 (7th Cir. 1968); Jobson v. Henne, 355 F.2d 129, 133–134 (2d Cir. 1966).

20. See cases cited note 12 supra. We think it clear that an action under § 1983 may be based on negligence, if that negligence leads to a constitutional deprivation. See also Jenkins v. Averett, 424 F.2d 1228 (4th Cir. 1970) (Sobeloff, J.); Whirl v. Kern, 407 F.2d 781, 787–789 (5th Cir. 1968), cert. denied, 396 U.S. 901, 90 S.Ct. 210, 24 L.Ed.2d 177 (1969).

tinct doctrine of official immunity discussed above. Thus it is not surprising to. find that in this jurisdiction, as in others, the common law has developed the same criteria for both kinds of immunity. The District of Columbia is immune from suit only for acts committed in the exercise of discretionary functions. Spencer v. General Hospital, 138 U.S.App.D.C. 48, 425 F.2d 479 (1969) (en banc). A function is discretionary under *Spencer* if it is "of such a nature as to pose threats to the quality and efficiency of government in the District if liability in tort was made the consequence of negligent act or omission." *Id.* at 51, 425 F.2d at 482. Accordingly, we must apply that standard to the conduct underlying each theory for holding the District subject to liability at common law.

■ A. *Vicarious liability at common law for Carlson's conduct.* The alleged tort of arresting officer Carlson is one possible basis for imposing vicarious liability on the District. We have already noted that the discretionary character of the decision to make an arrest without a warrant or to use force in doing so, does not shield the arresting officer from liability for assault, or for false arrest.[21] If the arresting officer himself is subject to suit for his tort, it is hard to conceive of any substantial additional threat to the efficiency of government that would result from subjecting the District to suit as well. Accordingly, we hold that the act of making an arrest is ministerial for the purposes of the *Spencer* doctrine of sovereign immunity.

The District urges us to limit the rule of *Spencer* to cases involving negligence, and to hold the municipal government completely immune from suit for the intentional torts of its employees.

In *Spencer* we indicated that we were influenced by the provisions of the Federal Tort Claims Act, 28 U.S.C. § 2680(a), in adopting "discretion" as the hallmark of acts protected by sovereign immunity. 138 U.S.App.D.C. at 53 & n. 7, 425 F.2d at 484 & n. 7. We are now urged to follow the Act again, and to adopt a rule of immunity for intentional torts, whether discretionary or ministerial in character. *See* 28 U.S.C. § 2680(h).[22] We made it clear in *Spencer*, however, that the Act does not in any way control the character of sovereign immunity in the District of Columbia; the developing common law of the District is neither precluded from adopting principles contained in the Act, nor required to do so.

The provision of the Act asserting the immunity of the United States with respect to certain intentional torts has been subject to severe and persuasive criticism. *See, e. g.*, K. Davis, Administrative Law Treatise § 25.08 (1958, Supp. 1970). In the absence of legislation, we see no reason to incorporate that immunity into the law of the District. When a tort is made possible only through the abuse of power granted by the government, then the government should be held accountable for the abuse, whether it is negligent or intentional in character. Accordingly, we reject the suggestion that the District is immune from suit for the intentional torts of its employees.

At one time the intentional character of Officer Carlson's alleged tort might have been a barrier to suit, not because of any quirk in the doctrine of immunity, but because many courts would not impose vicarious liability for an intentional tort.[23] Today, however, it is widely recognized that a master may be held liable for the intentional torts of his servants in appropriate circumstances. In particular, a servant authorized to make arrests ordinarily subjects his master to liability for using excessive

---

21. *See* p. 363 n. 9 *supra.*

22. The FTCA exemption actually covers only certain specified torts, and not all intentional torts; it does, however, cover the torts arising out of Officer Carlson's alleged conduct.

23. F. Harper & F. James, Law of Torts § 26.9 (1956).

force to make an arrest, or for making an unlawful arrest.[24] Since Officer Carlson was authorized by the District of Columbia to make arrests, misuse of that authority, even though intentional, may nevertheless result in vicarious liability on the part of the District.[25]

■ B. *Vicarious liability at common law for the conduct of supervisory officers.* The alleged negligence of Captain Prete and Chief Layton is another possible basis for imposing vicarious liability on the District. As we have previously noted, the present record does not disclose the precise character of either officer's supervisory functions. Thus at this stage it is impossible to determine whether the District is immune to suit with respect to their conduct, even as it is impossible to determine whether the officers themselves are immune at common law.

If it develops that either officer is subject to individual liability, then his negligence should subject the District to liability as well. That is, functions which are ministerial for the purpose of imposing liability on individual officers are also ministerial for the purpose of imposing liability on the government. For if the threat of individual liability does not impair the performance of a particular government function, then it is unlikely that the additional threat of government liability will have that effect.

If, on the other hand, it develops that the officers themselves are immune, we think that should not necessarily foreclose the question of the District's vicarious liability for their conduct.[26] With respect to some government functions, the threat of individual liability would have a devastating effect, while the threat of government liability would not significantly impair performance. If the trial court determines that this is such a case, then the officers, but not the District, will be entitled to immunity at common law.[27]

■ C. *Direct liability of the District for negligence at common law.* Appellant also claims that the District may be liable for its own negligence in

24. Restatement (Second) of Agency § 245 & comment *h* (1957). Of course Carlson's master for this purpose is his employer, the District, and not the supervisory officers who are in fact his fellow employees. *See* Robertson v. Sichel, 127 U.S. 507, 8 S.Ct. 1286, 32 L.Ed. 203 (1888) ; Bowden v. Derby, 97 Me. 536, 55 A. 417 (1903) ; Dowler v. Johnson, 225 N.Y. 39, 121 N.E. 487 (1918) ; Harper & James, *supra* note 23, § 29.8 at 1633–1634.

25. Because we are concerned in this case primarily with the threshold question of immunity, we do not now explore the ramifications of vicarious liability for intentional torts.

26. There is perhaps a conceptual difficulty with the notion of imposing vicarious liability on the District for the conduct of officers who are not themselves subject to liability. It is generally recognized, however, that the master can assert only the servant's substantive defenses, and not his immunity to suit. *E. g.*, Schubert v. August Schubert Wagon Co., 249 N.Y. 253, 164 N.E. 42 (1928) (servant's immunity from suit of spouse no bar to master's vicarious liability) ; *see* Harper & James, *supra* note 23, § 26.17.

27. In concluding that the common law immunity of the government may sometimes be narrower in scope than the immunity of government officers, we are in accord with the views of several leading commentators. *See, e. g.*, K. Davis, Administrative Law Treatise § 25.17 (1958, Supp.1970) ; 2 Harper & James, *supra* note 23, comment to § 29.10 n. 29 (Supp.1968) ; Mathes & Jones, Toward a "Scope of Official Duty" Immunity for Police Officers in Damage Actions, 53 Geo.L.J. 889 (1965). When the California Supreme Court embarked on its pioneering effort to update the law of the immunity of governments and of officers, the court similarly concluded that the immunity of a government unit for discretionary conduct should be narrower than that of an officer. Lipman v. Brisbane Elem. School Dist., 55 Cal.2d 224, 230, 11 Cal.Rptr. 97, 99, 359 P.2d 465, 467 (1961). The reasons given by the court are essentially those stated in text, *infra*. The California Legislature subsequently rejected that approach, however, making the two immunities for the most part coextensive. Calif.Tort Claims Act of 1963, § 1, Calif.Gov't. Code § 815.2 (b) (West 1966).

failing adequately to supervise, train, and control Carlson. This claim may be superfluous if appellant can attribute to specific government officers any negligence that may have occurred, and proceed against the District on a theory of vicarious liability. The claim of direct government liability will be important, however, if no individual officer can be charged with the alleged failure of training and supervision, either because the District has never delegated to any officer the relevant supervisory functions, or because appellant is unable to discover which officer is responsible.

Here the threshold question is whether the common law imposes on the District such a duty of supervision, with potential liability in tort for its breach.[28] We think this question was correctly answered by the District Court in Thomas v. Johnson, 295 F.Supp. 1025, 1030–1033 (D.D.C.1968). In a carefully reasoned opinion, the court held that the District of Columbia as a corporate entity has a duty to supervise, train, and control its police officers.[29]

A breach of that duty might involve either ministerial or discretionary aspects of supervising police officers. Accordingly, a claim of negligence based on a breach of that duty cannot be dismissed at this stage on the ground of sovereign immunity.

■ D. *Applicability of § 1983 to claims against the District.* Finally we reach the question of the District's possible liability under § 1983, as distinguished from its liability at common law. At first liability under the federal statute might seem to be precluded by Monroe v. Pape, 365 U.S. 167, 187–192, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), which held that the City of Chicago was not a "person" against whom suit could be brought under § 1983. The Court found that Congress, in enacting the statute, did not intend to extend liability to municipalities.

*Monroe* is regularly cited for the proposition that no suit against a municipality is authorized by § 1983.[30] The language of the Court's opinion certainly seems to go that far.[31] On the facts of the case before it, however, the

---

28. *Compare* Westminster Investing Corp. v. G. C. Murphy Co., 140 U.S.App.D.C. 247, 434 F.2d 521 (1970) (D.C. has no duty to protect citizens from riot damage, unnecessary to decide question of immunity).

Commentators have long urged the recognition of a municipal duty to supervise and train police officers. *See, e. g.,* Borchard, Government Liability in Tort, 34 Yale L.J. 229, 258 (1924); Foote, Tort Remedies for Police Violations of Individual Rights, 39 Minn.L.Rev. 493 (1955); Greenstone, Liability of Police Officers for Misuse of Their Weapons, 16 Clev.–Mar.L.Rev. 397, 408–411 (1967).

29. The court in *Thomas* apparently concluded that the duty of the District was broader than that of the Mayor or the Police Chief, for the court dismissed the complaint against each of those officers and refused to dismiss the complaint against the District. While we might question the propriety of reaching that conclusion on the bare pleading, we agree that on a proper record a court might well find a breach of duty attributable directly

to the government, and find further either that no individual officers could properly be charged with that breach, or that the responsible officers were immune while the District was not.

30. *See, e. g.,* Patrum v. City of Greensburg, 419 F.2d 1300 (6th Cir. 1969), cert. denied, 397 U.S. 990, 90 S.Ct. 1125, 25 L.Ed.2d 398 (1970); United States ex rel. Gittlemacker v. County of Philadelphia, 413 F.2d 84 (3d Cir. 1969), cert. denied, 396 U.S. 1046, 90 S.Ct. 696, 24 L.Ed.2d 691 (1970); Wallach v. City of Pagedale, 359 F.2d 57 (8th Cir. 1966).

31. After reviewing the legislative debates surrounding the defeat of a proposed amendment to the Civil Rights Act, the Court concluded:

The response of the Congress to the proposal to make municipalities liable for certain actions being brought within federal purview by the Act of April 20, 1871, was so antagonistic that we cannot believe that the word "person" was used in this particular Act to include them.

365 U.S. at 191, 81 S.Ct. at 486.

Court held only that § 1983 does not authorize a suit for damages against a municipality which has been clothed in immunity by its parent state. And, as we shall see below, the legislative history underlying the decision supports an interpretation of *Monroe* that limits it to those facts.

Several federal courts have concluded that suits for injunctive relief fall outside *Monroe's* prohibition on § 1983 suits against municipalities.[32] We hold that a suit for damages from the District of Columbia, otherwise within § 1983, presents another such exception, for two independent reasons.

First, the reasoning of *Monroe* is inapplicable to the extent that local common law recognizes municipal liability. *Monroe* is based on the evidence in the legislative history that Congress intended to avoid interfering with the liability of municipal governments.[33] Municipal liability and immunity were to be left to the exclusive control of the states. The intent of Congress was not to create municipal immunity, but to defer to the immunity that existed under local common law. Where local law has abolished or narrowed the scope of municipal immunity, the scope of immunity under § 1983 should follow the local rule.[34]

That construction of § 1983 finds additional support in a related statute, 42 U.S.C. § 1988, also enacted by a Reconstruction Congress as part of the original Civil Rights legislation.[35] § 1988 provides:

> [I]n all cases where [the laws of the United States] are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies * * * the common law * * * of the State wherein the court having jurisdiction * * * is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause * * *.

The Supreme Court has construed § 1988 to incorporate into the federal civil rights laws state rules of liability insofar as they serve the policies of the federal statutes more effectively than federal rules of liability. Sullivan v. Little Hunting Park, 396 U.S. 229, 240, 90 S.Ct. 400, 24 L.Ed.2d 386 (1969). If local law recognizes government liability where federal common law might not, then § 1988 seems to provide that the local rule shall govern in an action under § 1983.[36]

A second reason for holding the District subject to suit under the federal

32. *See* Garren v. City of Winston-Salem, 439 F.2d 140 (4th Cir. 1971); Harkless v. Sweeny Independent School Dist., 427 F.2d 319, 321–323 (5th Cir. 1970), cert. denied, 400 U.S. 991, 91 S.Ct. 451, 27 L.Ed.2d 439 (1971); Dailey v. City of Lawton, 425 F.2d 1037 (10th Cir. 1970); Adams v. City of Park Ridge, 293 F.2d 585 (7th Cir. 1961); Service Employees Int'l Union v. County of Butler, 306 F. Supp. 1080 (W.D.Pa.1969); Atkins v. City of Charlotte, 296 F.Supp. 1068 (W. D.N.C.1969); Comment, Injunctive Relief Against Municipalities Under Section 1983, 119 U.Pa.L.Rev. 389 (1970).

33. The Court relied primarily on the vehemence of the opposition to the Sherman Amendment, which was resisted as unwise or unconstitutional or both. The constitutional basis for opposition was quoted by the Court:

> [T]he House had solemnly decided that in their judgment Congress had no con-

stitutional power to impose any obligation upon county and town organizations, the mere instrumentality for the administration of State law.

365 U.S. at 190, 81 S.Ct. at 485, *quoting* Cong.Globe, 42d Cong., 1st Sess. 804 (1871) (remarks of Representative Poland).

34. *See* Kates, Suing Municipalities and Other Public Entities Under the Federal Civil Rights Act, 4 Clearinghouse Review 177, 196–198 (1970).

35. Civil Rights Act of 1866, § 3; Civil Rights Act of 1870, § 18, R.S. §§ 722, 42 U.S.C. § 1988 (1964).

36. The Ninth Circuit has rejected the argument that municipal liability under § 1983 is controlled by state law. Brown v. Town of Caliente, 392 F.2d 546 (9th Cir. 1968). In that case, however, it does not appear that the relevance of § 1988 was argued.

statute flows from the unique character of the District of Columbia. *Monroe* reflects the fact that the Reconstruction Congress had doubts about its constitutional power to impose new liability on an ordinary municipality, which was regarded as the "mere instrumentality for the administration of state law." [37] But Congress could have had no such doubts about its power to impose liability on the District of Columbia, over which it has complete legislative jurisdiction.[38] Thus the considerations that led the *Monroe* Court to exclude ordinary municipalities from the ambit of § 1983 have no application to the District.

Accordingly, we hold that the District of Columbia may be sued under § 1983, for all three claims presented by the complaint in this case.[39] If appellant can prove that he was deprived of constitutional rights by the negligence of the District, the negligence of Officers Prete or Layton, or the conduct of Officer Carlson, then he has a federal statutory right to damages from the District of Columbia.

## III. CONCLUSION

We have concluded that the complaint in this case states facts sufficient to sustain a number of distinct causes of action against a motion to dismiss. Of these, perhaps the most promising is the claim against the District for the tort of the arresting officer. The theoretical profusion of remedies may of course be largely illusory. The obstacles to recovering in tort from an individual police officer are notorious, and the obstacles to recovering from the government are almost as great.[40] Nevertheless, until the legislature provides a substitute scheme for compensating the victims of police torts, common law principles and the federal Civil Rights Acts guarantee to people like appellant at least a day in court.

The judgment of the District Court dismissing the complaint is reversed, and the case is remanded for further proceedings on all counts.

So ordered.

NICHOLS, Judge (concurring):

I join in the decision of the court in this case and in its reasoning except where it is inconsistent with the observations that follow.

The problems posed appear to be of the highest importance and not only to my colleagues on the panel, who as regular judges of the D.C. Circuit will have to live with what we say herein, but also

---

37. *See* note 33 *supra.*

38. U.S.Const. art. 1, § 8, cl. 17.

39. A few courts have suggested that there can be no vicarious liability under § 1983. *See* Sanberg v. Daley, 306 F.Supp. 277 (N.D.Ill.1969) ; Salazar v. Dowd, 256 F.Supp. 220, 223 (D.Colo.1966). The real basis for these cases, however, is that a superior officer is not subject to vicarious liability for the torts of his subordinate, whether at common law or under § 1983, because they are both servants of the same employer, *see* note 24, *supra.*

Ordinarily in a § 1983 suit the only employer is a public entity, whose liability is thought to be precluded by *Monroe,* and not by any theoretical bar to the doctrine of vicarious liability. Hill v. Toll, 320 F.Supp. 185 (E.D.Pa.1970), presented the issue of vicarious liability with unusual clarity. The defendants in that case were, *inter alia,* a surety company that had provided the plaintiff with

a bail bond, and the surety's agent, who arrested the plaintiff in connection with the bail bond contract. While the arresting agent was deemed to be acting under color of law, his employer, unlike the ordinary § 1983 employer, had no claim to governmental immunity. Consequently, the court was confronted with a clear question of the applicability of *respondeat superior* in a suit under § 1983. The court held that § 1983 incorporates the common law doctrine of *respondeat superior,* 320 F.Supp. at 188–189, a result compelled in our view not only by the reasoning of the *Hill* court but also by 42 U.S.C. § 1988, discussed above. *Accord,* Hesselgesser v. Reilly, 440 F.2d 901 (9th Cir. 1971).

40. *See* Wolf v. Colorado, 338 U.S. 25, 42–44, 69 S.Ct. 1359, 93 L.Ed. 1782 (1949) (Murphy, J., dissenting) ; Foote, Tort Remedies for Police Violations of Individual Rights, 39 Minn.L.Rev. 493 (1955).

to me as a citizen and taxpayer of the District of Columbia. I want to state my position because I am fearful that the decision we come to may wrongly be taken as just another manifestation of that deplorable hostility between bench and bar, and police, that has grown up so fast in my lifetime, and which in my view constitutes a disturbing symptom of the degeneration of our society.

First of all, as to officers Prete and Layton. The trial court apparently held they were immune from suit because of their official status, regardless of their share, if any, in the alleged wrong, and also because they were not alleged to have had a direct share in it. It seems to me we had to reverse and remand because the imputed rationale of the decision below would if followed go far to render useless and futile a major provision of the Civil Rights Act of 1871, 42 U.S.C. § 1983, quoted in this court's opinion. If state or territorial supervisory police officials (including D.C.) are to be absolutely immune from personal liability, simply by virtue of their positions, the section might as well be repealed, it would be so spotty and erratic in its application. Congress could not have intended this and the law has not done it hitherto. The police official is in such a key position as to Civil Rights, that to immunize him would deny equal justice to anyone else who might incur personal liability under § 1983. Thus I deem it necessary to follow decisions of other circuits cited by this court, but apparently ignored by the court below, holding that local law rules of immunity for local officials do not necessarily or wholly apply to them in § 1983 cases. I do not see any reason to think that in the immediate future any such state or territorial immunity will be recognized under § 1983 in any Federal court unless in a context where its continued existence appears consistent with the purposes of § 1983.

I deem it therefore a sterile exercise to consider whether outside of § 1983, defendants Layton and Prete may be immune from suit at common law to the extent to which their now unascertained duties are held to be discretionary. Certainly § 1983 takes such *per se* immunity from them.

I do not think that a Federal officer not subject to § 1983 by its terms, and sued in tort at common law, should be held to enjoy an immunity denied his state or territorial brother similarly situated. I wish to "record a continuing belief that all police and ancillary personnel in this nation, whether state or Federal, should be subject to the same accountability under law for their conduct." See concurring opinion of Judge Bell in Anderson v. Nosser, 438 F.2d 183, 205 (5th Cir. 1971), calling attention to this apparent anomaly in that circuit and referring to Judge Gewin's dissent in Norton v. McShane, 332 F.2d 855, 863 (5th Cir. 1964). I think rather that § 1983 *extends* to local officials a Federal common law rule that determines primarily and of its own force the liability or immunity of Federal officials for breaches of civil rights protected by the Constitution. The existence of such a rule will no longer be denied in view of Bivens v. Six Unknown Named Agents, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), although the part of it that establishes official immunities is left open, except in Mr. Justice Harlan's concurring opinion. The District of Columbia being a Federal enclave, here least of all is there any rhyme or reason for any distinction between the immunities of Federal and D.C. officials. In the states, contrariwise, the Federal system requires that Federal courts when exercising pendent or diversity jurisdiction respect any immunities of state officials against liability under *state* law, and this is done in Roberts v. Williams (5th Cir. 1971), where certain county officials were held absolutely immune under their own state law of torts, but only qualifiedly immune under 42 U.S.C. § 1983.

Thus the necessity as we hold here, that plaintiff have his day in court, I would apply to a Constitutional claim of a similar kind against a police of-

ficer employed by any state or territory and also against any person employed in the District of Columbia or elsewhere by the Federal government and having functions remotely comparable to those of a D.C. police officer. I deem it important to emphasize that D.C. police are not second-class citizens. If there is a difference it is in fact situations not applicable here.

David v. Cohen, 132 U.S.App.D.C. 333, 407 F.2d 1268 (1969) is the leading case in this circuit on the immunity of Government officials, and properly has received careful attention in the instant case, but it confronts us with complications not easily made simple. The plaintiffs, Mr. and Mrs. David, had been delinquent Federal taxpayers. He paid the deficiencies, but a few days later the Internal Revenue Service levied on his bank account, causing their outstanding checks to be dishonored, with adverse consequences to them. Revenue agent Lynch, a defendant, issued the levies because of a mistake of fact. Both parties moved for summary judgment, and the trial court dismissed the complaint. This court affirmed. Defendant Sheldon Cohen, then Commissioner of Internal Revenue, was shown to have had no operating responsibilities in the issuance of levies, delegations of authority being outstanding, that vested this duty in subordinates. The court reasoned from this that Mr. Cohen could not have been personally negligent except in the exercise of supervisory duties and any failure in that capacity would be "within the scope of his authority and in the discharge of his official duties." I read this as meaning that a person at Mr. Cohen's level could not be liable for negligence in generally managing and directing the policies and procedures of the agency, in the absence of malice towards plaintiffs, or any act specifically directed at them. A breach of duty respecting plaintiffs specifically was not possible, and any deficiency in the discretionary general management of the agency was not the proper subject of a lawsuit. It is hard to tell, however, to

what extent Mr. Cohen's immunity resulted from his general status as an official of his high level, and to what extent from an analysis of the breaches of duty possible to him in that particular case. The opinion recites the need that he should do his duty unembarrassed by fear of damage suits which would consume time and energies needed for public service. This suggests that the real foundation of the immunity is status. However, agent Lynch, an official of no particular status, was held immune also, though he actually issued the offending levies. He acted under a mistake of fact, but there was no consideration whether it might have been his duty to know the facts. This issue was apparently dismissed as not relevant. It was held "he made the type of mistake of fact that is insulated by the privilege given to non-ministerial acts." "The test of whether a challenged action is ministerial or non-ministerial is not the office *per se* or its height, but whether the function itself was of such discretionary nature that the threat of litigation would impede the official to whom it was assigned."

The immunities of these two defendants thus appear to be of different kinds. That of Mr. Cohen results from the insulation afforded to him by delegations of authority, from responsibility for the actual operative decision that led to the injury. That of Mr. Lynch is the official's qualified immunity when he has to make a difficult discretionary decision and acts under a mistake of fact. If either had been a municipal official sued under § 1983, I doubt if the results would have been different, that is, I question whether anything should properly have turned or did turn on their employer being the Federal government. It has been said that no one has a Constitutional right to be free from a law officer's honest misunderstanding of law or fact in making arrest. Gabbard v. Rose, 359 F.2d 182 (6th Cir. 1966). Thus it seems there is some kind of immunity from negligence liability where the alleged negligence is failure to be informed, that covers a wide spectrum of

official acts. *Cf.* Pierson v. Ray, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967). And we have also involved here the ancient reluctance of courts to substitute their judgment for that of executive government officials, in the making of policy or managerial decisions confided by law to the latter persons. Marbury v. Madison, 1 Cranch (5 U.S.) 137, 2 L.Ed. 60 (1803).

While the final adjudication of this case will require findings as to the duties of defendants Layton and Prete, as the majority hold, it may be premature to deal with them as a threshold question. I do not for myself consider I need that knowledge to assure me that they do not have the status immunity apparently allowed to Mr. Cohen, *supra,* absolute in the absence of malice. Their duties must be known for a determination whether they breached them. I think it is at least useful and roughly accurate to describe the position of police and other municipal officials not having absolute immunity as being one of qualified immunity, under § 1983. McLaughlin v. Tilendis, 398 F.2d 287 (7th Cir. 1968); Nelson v. Knox, 256 F.2d 312 (6th Cir. 1958); Cobb v. City of Malden, 202 F.2d 701 (1st Cir. 1953). They are not liable for executive or managerial elections among policy alternatives, or good faith acts on mistaken fact premises, and in a negligence claim, only for a clear breach of duty that led ,to the injury. Thus they are not liable for honest, good-faith errors of judgment, because an official who exercises his best judgment does not commit a breach of duty just because he is wrong. It might be that delegations of authority would, as in the case of Mr. Cohen, insulate the D.C. Chief of Police from the kind of decision making, as to training of patrolmen, that might generate tort liability, but I think the hurdle plaintiff must surmount is more fundamental. We might well have followed the example Chief Judge Magruder of the First Circuit set some years ago, in remanding a 42 U.S.C. § 1983 case where the lower court had erroneously allowed absolute immunity to city officials. Cobb v. City of Malden, 202 F.2d at 706 (concurring). He said:

\* \* \*. But I think it deserves to be emphasized how unlikely it is that the plaintiffs will be able to recover judgment, upon trial of the case against the individual defendants, in view of what plaintiffs will have to prove [under the qualified immunity standard] in order to make out a cause of action in tort.

It appears to me to be a rare situation where one exercising a supervisory or managerial responsibility in Government has committed such a clear cut breach of duty that he is personally liable in spite of this qualified immunity. Roberts v. Williams, *supra,* offers an example of the failure of mere mistakes to reach that level. If plaintiff has nothing more specific against defendants Prete and Layton than he divulged at the oral argument, the ethics and propriety of subjecting busy and harassed officials, defendants and others, to a long course of discovery depositions should be carefully considered. Modern summary judgment procedures, however, afford good means of promptly eliminating from a case parties who should not be in it, as was done in David v. Cohen, *supra,* and in Joyce v. Ferrazzi, 323 F.2d 931 (1st Cir. 1963). There is really no limit to the nature of information that may be put before a court on a motion for summary judgment, and I am therefore not at all certain that treating as a threshold question the issue of immunities, as distinguished from the merits, really helps to protect busy officials from harassment by unmeritorious suits.

By P.L. 91–358, approved July 29, 1970, Title V, §§ 501 and 502, Layton and Prete would have had the right to be defended by the D.C. Corporation Counsel if this suit had been brought after the date of enactment. As it is, such defense is apparently a matter of grace. The Corporation Counsel did represent them before us. While the trial judge will have authority to allow amendment

to the complaint, I see all this as reason to be cautious indeed with respect to amendments that would add any new charges against the defendant police officials, not asserted before July 29, 1970. The original complaint did not allege that Layton and Prete knew Carlson was in the habit of using brass knuckles; plaintiff would like to add this. I view it as a new charge. The original complaint only alleged deficient performance in their supervisory or managerial capacities, and this goes further.

I turn now to the liability of the municipality. In view of the holding that it is liable for either a negligent injury or an intentional assault inflicted by Carlson upon Carter, if proved, I find it difficult to imagine how the alleged negligence of Layton and Prete, or anyone else, or their non-negligence, would either enhance or diminish the municipality's liability as it would otherwise be. If it did make a difference, I find it hard to understand how they could be negligent enough to expose the municipality to liability *for their negligence,* without being negligent enough to lose their immunity to personal liability qualified as it is. This notion may be valid in other contexts, but not here. The opinion of the court thus starts some hares that lack bodily substance, I believe.

In general, it appears to me that the law being left, as it has been in this area, to be made by judges, judges should make it as this second part does. In the existing state of our society, we have to have policemen, and policemen who are combative when that quality is needed. Training and discipline do wonders, but at best, a combative person is not always able to turn his combativeness on and off as lawyers and judges deem proper. Therefore, despite the best

efforts of those in authority, policemen will at times use excessive force or attack people without lawful cause. Those wronged are not wronged by the policeman alone or even chiefly, and not by the supervisor merely because he has failed to give the very best training and instruction. It is the municipality which employs the policeman, because it knows of no other way to hold the forces of evil in check, and has failed to diminish them or remove the causes that bring them into being, with any real effectiveness. Thus it appears very unjust for a citizen, injured in such an encounter, to have to look for redress only to a patrolman who maybe cannot even be served with process, like Carlson here, or is judgment proof. It is not much more satisfactory if he can sue supervisory officials who most likely were doing everything possible according to their lights to avert the evil that occurred. The municipality which arms and uniforms an untrained person and puts him on the streets without need, in anything short of a desperate emergency, has committed a grievous wrong.

On the other hand, one must consider that many suits will be groundless. Sufficient exposure to these, and the effort required to defeat them—even if counsel fees are not a factor—might lead policemen to refuse to take decisive action that would be lawful and needs to be taken. Here, it seems that a sharing of the exposure, by the municipality, would be conducive to the disinterested and fearless police action we all desire. The Congress has recognized the possibly chilling effect of groundless suits upon police initiative in the new legislation above mentioned, and I think today's decision conforms to the same considerations and policy. The policeman no longer stands in court alone and undefended.