**William Donovan RUNDLE, Jr., et al.,
Plaintiffs,**

**v.**

**Frank I. MADIGAN et al.,
Defendants.**

**Nos. C–70–334, C–70–333.**

United States District Court,
N. D. California.

Nov. 20, 1972.

Richards, Watson & Hemmerling, Los Angeles, Cal., for plaintiffs.

Richard J. Moore, County Counsel, Crosby, Heafey, Roach & May, Profes-

sional Corp., Oakland, Cal., for defendants.

## MEMORANDUM

PECKHAM, District Judge.

Defendants have moved to dismiss or in the alternative for summary judgment on counts 1 and 5 of plaintiffs' amended complaint. These counts allege causes of action based on violations of plaintiffs' civil rights, pursuant to 42 U.S.C. §§ 1983, 1985(3). Plaintiffs have moved for summary judgment on count 1. In addition to their other contentions, defendants interpose the defense of sovereign immunity against all the acts complained of. The complaint alleges the shooting of plaintiffs by the defendant Riche and asserts claims against the other defendants based on their improper supervision of Riche.

1. *Sovereign Immunity.*

■ It is important to note at the outset that the Sheriff may not be held *vicariously* liable for the acts of his subordinates. This rule was set down by the Ninth Circuit in Hesselgesser v. Reilly, 440 F.2d 901 (9th Cir. 1971). Thus, if the Sheriff is to be held liable for any injuries sustained by the plaintiffs, there must be a showing that the Sheriff *by his own acts* violated one of the Civil Rights Acts in question.

Plaintiffs allege that Sheriff Madigan committed several acts for which he should be held liable:

"a. Failing to adequately plan to deal with the events that occurred in Berkeley on May 15, 1969 in spite of his having been informed by his own intelligence network well in advance of May 15, 1969, that a riot could be expected if any efforts were made to clear People's Park;

b. Failing to utilize any meaningful criteria or standards in selecting which members of the Alameda County Sheriff's Department would be used in Berkeley on May 15, 1969 in spite of such warning;

c. Selecting deputy sheriffs who were essentially untrained in riot control work, and in some instances, still on a probationary status, to work in Berkeley on May 15, 1969;

d. Issuing riot guns and double-aught buckshot to these essentially untrained and probationary deputies; and

e. Failing to provide any leadership or control of these deputies once the guns and ammunition had been issued."

■ The defendant Madigan argues that these acts are discretionary and should be protected by the doctrine of sovereign immunity. The Court disagrees. "Discretionary acts" are narrow in scope; for example, "discretionary acts" for the purpose of applying the doctrine are narrower in breadth than acts within the scope of authority. Courts have been extremely reluctant to invoke the immunity doctrine in § 1983 cases. *See, e. g.,* Roberts v. Williams, 456 F.2d 819 (5th Cir. 1972); Carter v. Carlson, 144 U.S.App.D.C. 388, 447 F.2d 358 (1971).

The defendant's own authority likewise seems to go against him. Boreta v. Kirby, 328 F.Supp. 670, 673 (N.D.Cal. 1971), asks: "[I]s the act complained of the result of a judgment or decision which it is necessary that the Government official be free to make without fear or threat of vexatious or fictitious suits and alleged personal liability?" In the instant case, the answer to this query is no.

2. *The Section 1985(3) Claim.*

■ Several elements constitute a § 1985 conspiracy claim. One is that the plaintiffs have been deprived of "equal protection of the law" or of "equal privileges and immunities under the law." Due process violations *alone* do not suffice. Defendants argue that plaintiffs cannot show such a deprivation of equal

treatment, citing Collins v. Hardyman, 341 U.S. 651, 661, 71 S.Ct. 937, 95 L.Ed. 1253 (1950). *See also* Snowden v. Hughes, 321 U.S. 1, 64 S.Ct. 397, 88 L. Ed. 497 (1944); Egan v. City of Aurora, 291 F.2d 706 (1961).

■ Plaintiffs argue in response that either 1) § 1985 covers due process violations as well; or 2) they *have* made a sufficient showing of discriminatory treatment to withstand defendants' motion for summary judgment. The only case they cite to support their position is Griffin v. Breckenridge, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971), which reverses *Collins* to the extent that § 1985 now applies to private individuals. Thus, under *Collins*, the plaintiffs must still show some denial of equal protection to make out a § 1983 claim. This they have failed to do. Summary judgment is therefore granted as to all defendants on all claims based on § 1985(3).

### 3. *Section 1983 Conspiracy Claim.*

■■ There are two questions here. First, can one validly make a *conspiracy* claim under § 1983? Second, if so, are there sufficient issues of fact to defeat either side's motion for summary judgment on this issue?

The Ninth Circuit has ruled that a plaintiff *can* state a civil cause of action for conspiracy under § 1983. Cohen v. Norris, 300 F.2d 24 (9th Cir. 1962); Hoffman v. Halden, 268 F.2d 280 (9th Cir. 1959). The former case involved a mental patient in a state hospital who was allegedly improperly held in the hospital; the latter case involved a suit against city police officers for unreasonable searches and seizures. The appellate courts in both cases held that it was unnecessary to allege a conspiracy to deny the plaintiffs the equal protection of the laws; a conspiracy to deprive them of their civil rights *without due process* was sufficient to state a claim under § 1983. *See also* Mizell v. North Broward Hospital District, 427 F.2d 468 (5th Cir. 1970).

■ Clearly, conspiracy must still involve an allegation and proof of *purpose.* Plaintiffs argue that the language of Cohen v. Norris eliminates the purpose requirement. This Court disagrees. However, although plaintiffs' allegations and facts concerning purpose are skimpy, the requisite purpose may be inferred therefrom. Defendants' motions for dismissal or summary judgment on the § 1983 claim are denied.

### 4. *Section 1983 Tort Claim.*

■ In claim 5 of their amended complaint, plaintiffs allege that "These acts [of misfeasance by the Sheriff, noted above] were the result of a conscious indifference or disregard of the possible consequences to the plaintiff . . . ." The immediate result of the actions of the sheriff and deputies was the shooting of plaintiffs by officer Riche. Plaintiffs allege that that shooting deprived plaintiffs of their rights to life and liberty without due process of law, in violation of the 14th Amendment. The actual deprivation of a constitutional right is therefore pleaded, without regard to the actions of Riche's superiors.

Having established that the superiors acted under color of state law, and that the plaintiffs were deprived of a constitutional right, the question becomes, did the actions of the supervisors directly cause that deprivation? Again, the answer seems clear; Riche fired on plaintiffs and inflicted their injury only because, according to plaintiffs, he was placed on duty and given the weapons and instructions to use them by his superiors. In the language of § 1983, the superiors "cause[d] [plaintiffs] to be subjected . . . to the deprivation of . . . rights . . . secured by the Constitution and laws . . . ."

Since Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), § 1983 has been read "against the background of tort liability mak[ing] a man responsible for the natural consequences of his acts." 365 U.S. at 187, 81 S.Ct.

at 484.[1] Courts have put to rest former notions that relief under § 1983 depended upon proof that the deprivation complained of was the result of the intentional act of the defendant. *See, e. g.,* Whirl v. Kern, 407 F.2d 781, 787–789 (5th Cir. 1969), cert. den. 396 U.S. 901, 90 S.Ct. 210, 24 L.Ed.2d 177. Defendants in the instant case argue, however, that at least a "quasi-intent" on the part of the Sheriff and his deputies is required to hold them liable for plaintiffs' injuries under § 1983.

The current of recent decisions in all circuits is against this contention. The Ninth Circuit has not settled the question what degree of culpability is required to state a cause of action under § 1983. In Williams v. Field, 416 F.2d 483, 485 (9th Cir. 1969), the court affirmed the dismissal of a complaint from a San Quentin inmate who alleged that the prison authorities failed to protect him from the attack of another prisoner after they had been put on notice that such an attack would take place. In so holding, the court said:

> "Since Monroe v. Pape, . . . some courts, like the district court in the instant case, have held that unintentional conduct does not state a claim under section 1983. . . . . Another court has indicated that negligent conduct in the appropriate circumstances may support a claim under section 1983. . . . The 'natural consequences' test formulated by Mr. Justice Douglas apparently leaves open the question of the degree of culpability required by section 1983. It may be that negligent conduct, in the appropriate circumstances, will support an action under section 1983 . . . Mere negligent failure to act, standing alone, however, would seem insufficient.

In addition to an allegation of the requisite degree of culpability, plaintiffs in section 1983 actions must show a violation of federally secured rights."

The Ninth Circuit has not spoken on the question of the requisite degree of culpability since this opinion.

In the Fourth and Fifth circuits, courts have held that negligence alone is sufficient to state a cause of action. However, the facts of the cases decided differentiate, and to some degree belie, these holdings. The outstanding case is Jenkins v. Averett, 424 F.2d 1228 (4th Cir. 1970). There, the court (Sobeloff, J.) specifically found the reckless use of excessive force by a police officer seeking to arrest plaintiff. The court held that plaintiff's complaint stated a cause of action under § 1983, and specifically distinguished the "raw abuse of power" present in the case before it from cases of simple negligence. The court held that the requirements of § 1983 were satisfied by "gross and culpable negligence." *Id.* at 1231–1232. Simple negligence was not the basis of the decision.

In a very recent Fourth Circuit opinion, the court (Sobeloff, J.) holds that simple negligence alone may satisfy § 1983. McCray v. Maryland, 456 F.2d 1, 4–5 (4th Cir. 1972). The district court dismissed a civil rights complaint alleging that plaintiff's constitutional right to access to the courts had been denied by a clerk of the state court who had negligently failed to file plaintiff's writ of habeas corpus. The circuit court reversed and ordered the district court to hear the case. The only authority cited for this holding was the decision in Jenkins v. Averett.

In the Fifth Circuit, the courts have granted relief in cases involving the equivalent of "gross negligence." Roberts v. Williams, 456 F.2d 819 (5th Cir. 1972), cert. den. 404 U.S. 866, 92 S.Ct. 83, 30 L.Ed.2d 110, is a case quite similar factually to that before this court. The superintendent of a prison farm was held liable for injuries to a prisoner shot by a 'trusty' who was overseeing

---

1. The statute predating § 1983 [18 U.S.C. § 242] in terms required *intentional* deprivation; § 1983 omits any "intent".

work on a public road. The trusty's rifle discharged as a result of his negligence. The superintendent was held liable because of his failure properly to train the trusty in the use of firearms and for the specific job he entrusted to him. The precise facts of the failures to train, related to the district judge and noted in the circuit court's opinion, are extremely similar to the allegations directed at the sheriff and his deputies in this case. *See id.* at 822–23. *See also* Anderson v. Nosser, 456 F.2d 835 (5th Cir. 1972).

Many courts have read the Fourth Circuit decision in *Jenkins* for the proposition that negligence—whether simple or gross—is sufficient culpability to state a cause of action under § 1983. *See* Puckett v. Cox, 456 F.2d 233 (6th Cir. 1972); Carter v. Carlson, 144 U.S. App.D.C. 388, 447 F.2d 358, 365 & n. 20 (1971); Build of Buffalo, Inc. v. Sedita, et al., 441 F.2d 284 (2d Cir. 1971). Other courts as well have been imprecise in finding allegations of negligence sufficient under § 1983. *See* Joseph v. Rowlan, 402 F.2d 367 (7th Cir. 1968); Daniels v. Van De Venter, 382 F.2d 29, 31 (10th Cir. 1967); Stringer v. Dilger, 313 F.2d 536, 540–541 (10th Cir. 1963).

Fortunately, some courts have been clearer about the distinction drawn in *Jenkins* between simple and gross negligence. The court in Mullins v. City of River Rouge, 338 F.Supp. 26 (E.D. Mich.1972), dismissed the complaint of a plaintiff who was arrested on a city street in winter and taken to the station as a drunk. In fact, he was not drunk and was suffering from severe frostbite. As a result of the neglect of his captors, all his fingers and parts of this thumbs were amputated. He charged the arresting officers with negligence in failing to perceive the frostbite and not rendering him medical attention. The court found that the officers were not in fact negligent, but that even assuming negligence, they could not be held liable under § 1983. The court cited *Jenkins* and drew the distinction between mere negligence and gross negligence. *See also* Richardson v. Snow, 340 F.Supp. 1261 (D.Md. 1972).

This Court's decision whether plaintiffs' allegations state a cause of action under § 1983 should consider the policy behind allowing recovery under the civil rights acts. If the purpose of the acts is to deter individuals acting under color of state law from abusing the rights of others, then the distinction between gross and simple negligence is sensible. There is deterrent value in charging a sheriff, or even a court clerk, with the responsibility for organizing and supervising the affairs of his office so as to insure against even the *chance* that someone's constitutional rights will suffer as a result of his or one of his subordinate's actions. In every case refusing to dismiss a complaint where only negligence is alleged, we have a situation, as we do here, where reasonable precautions could easily avoid catastrophic consequences; delegating authority to wield and discharge a firearm in the presence of people is a very serious matter demanding a high degree of care. Failure to exercise such care would seem to be gross negligence, which is the same as conscious disregard for the rights of others. The case of the court clerk's mistake, however, does not involve gross negligence, and it can only be explained if the deterrent policy of the statute encompasses patterns or systems of behaviour dangerous to civil rights. The actions alleged in the instant case would fall within this rationale as well.

However, it is likewise possible to view § 1983 as giving a straightforward tort remedy for *any* deprivation of civil rights caused by one acting under color of law, no matter how such deprivation came about. At least one court has taken this view:

"[U]ntil the legislature provides a substitute scheme for compensating the victims of police torts, common law principles and the federal Civil Rights Act guarantee to people like

[plaintiff] at least a day in court." Carter v. Carlson, 144 U.S.App.D.C. 388, 447 F.2d 358, 370 (1971).

If all deprivations that can be proved are to be compensated, then simple negligence should be the rule, leaving to the actors, of course, their defenses as they would have them at common law. Pierson v. Ray, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967).

This Court need not decide the question whether simple negligence suffices under § 1983 since the complaint in this action alleges circumstances bringing the case within the gross negligence rule of *Jenkins*. Hence, count 5 of the amended complaint should not be dismissed for failure to state a claim. Nor should either side's motions for summary judgment be granted—the facts need developing. Motions to dismiss and for summary judgment denied.